# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

      vs.                            No. CR 25-0879-008 JB

HERIBERTO SALAZAR-AMAYA, a.k.a.
"HSA," "Juan," "El Paisa," "Viejo," "Heriberto
Salazar-Torres," "Gabriel Gomez-Torres," and
"Pedro Gomez-Diaz," CESAR ACUNA-
MORENO, a.k.a. "Pollo," BRUCE SEDILLO,
a.k.a. "YG" and "Youngster," VINCENT
MONTOYA, a.k.a. "La Gringa" and "Guilt,"
FRANCISCO GARCIA, a.k.a. "Pancho,"
DAYID ANESI, GEORGE NAVARRETE-
RAMIREZ, a.k.a. "Pantera" and "Panther,"
ALEX ANTHONY MARTINEZ, a.k.a. "Bow,"
"Bose," and "Volt," JOSE LUIS MARQUEZ,
NICHOLAS TANNER, BRIAN SANCHEZ,
KAITLYN YOUNG, a.k.a. "La de la motor,"
ALAN SINGER a.k.a. "El de la Moto," DAVID
ALTAMIRANO-LOPEZ, a.k.a. "Yogi,"
ROBERTA HERRERA, and MISAEL LOPEZ-
RUBIO, a.k.a. "Bruno."

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the United States' Notice of Intent to
Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) and *Res Gestae*, filed July 19,
2025 (Doc. 402)("404(b) Motion"); and (ii) the United States' requests at the July 28, 2025
Hearing to amend the charged conspiracy dates and admit evidence outside of the charged
conspiracy dates.  The primary issues are: (i) whether the Court should deem the United States'
proffered evidence of jail calls between Martinez and Bruce Sedillo, admissible as intrinsic
evidence, or extrinsic evidence under rule 404(b) of the Federal Rules of Evidence; (ii) whether

Martinez' prior conviction is admissible; (iii) whether the United States can amend the indictment's charged conspiracy dates to include two additional months; (iv) whether new evidence of jail calls and drugs during the two additional months outside of the indictment's charged conspiracy dates are admissible; and (v) whether Martinez has sufficient notice of the new evidence.  The Court concludes that: (i) the United States' proffered evidence is admissible as res gestae intrinsic evidence and it is also admissible under rule 404(b); (ii) Martinez' prior conviction is not admissible because of its prejudicial effect; (iii) the United States can amend the indictment's charged conspiracy dates because there is no prejudicial effect to Martinez; (iv) the new evidence during the new conspiracy dates are admissible because it continues evidence of the charged conspiracy; and (v) Martinez has sufficient notice of the new evidence because the rule 404(b) notice requirement does not apply.

## FACTUAL BACKGROUND

For purposes of this motion, the Court relies upon the factual background from various filings in this case as well as from the Drug Enforcement Administration ("DEA") Special Agent David Zimmerman's Affidavit, see, Affidavit In Support of An Application Under Rule 41 For A Warrant to Search and Seize (dated May 2, 2025), filed July 7, 2025 (Doc. 301-2)("Zimmerman Aff.").

In February 2021, Martinez is arrested and charged with Felon in Possession of a Firearm, in violation of 18 U.S.C. § 922(g)(5).  See United States v. Alex Martinez, No. CR 21-0310 DHU, Complaint, filed February 1, 2021 (D.N.M.)(Doc. 1)("Martinez I").  The Honorable John F. Robbenhaar, United States Magistrate Judge for the District of New Mexico, issues an Order Setting Conditions of Release, filed February 24, 2021 (Doc. 17)(" Martinez I Release Order") that requires Martinez, among other conditions, to "not violate federal, state, or local law while on

release." Martinez I Release Order at 2-3. On October 24, 2024, Martinez signs a written plea

agreement under rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure which enters a guilty

plea and stipulates to a sentence of 60 months. See Martinez I Plea Agreement at 1-12, filed

October 24, 2024 (Doc. 85).

Approximately six months after entering the guilty plea in Martinez I, and while pending

sentencing, a federal Grand Jury returns a twelve-count Indictment that charges Martinez and

thirteen others with narcotics, firearms, and immigration offenses. See Indictment at 1, filed April

24, 2025 (Doc. 25). See also Superseding Indictment at 1-31, filed June 25, 2025 (Doc. 225). The

Grand Jury returns the Second Superseding Indictment, filed July 16, 2025 (Doc. 357), which

charges Martinez with three counts: Count 1 -- Continuing Criminal Enterprise (21 U.S.C. §

848(a)); Count 2 -- Conspiracy (21 U.S.C. § 846); and Count 8 -- Possession with Intent to

Distribute 400 Grams and More of Fentanyl and Aiding and Abetting (21 U.S.C. §§ 841(a)(1) and

(b)(1)(A)(vi); 18 U.S.C. § 2). See Second Superseding Indictment at 1-14. The conspiracy charge

alleges that, from July 1, 2024, through April 29, 2025, Martinez and others conspired to distribute

controlled substances. See Second Superseding Indictment at 4-14.

## PROCEDURAL BACKGROUND

The Court summarizes the United States' 404(b) Motion, which includes the evidence that

the United States seeks to admit under rule 404(b) of the Federal Rules of Evidence. The evidence

consists of recorded jail calls between Martinez and his brother Sedillo, who is incarcerated at

Cibola County Correctional Center ("Cibola Correctional"), that allegedly reveal information

regarding smuggling and distributing narcotics in the Cibola Correctional. See 404(b) Motion at

3-6. The United States argues that these jail calls regarding drug trafficking in Cibola Correctional

establish evidence of Martinez' crime in this case and are also res gestae intrinsic evidence of the

crime in this case.  See 404(b) Motion at 7-8.  The United States then argues that, even if the evidence is "other acts" under rule 404(b) such that rule 404(b) applies, then the evidence is admissible, because the evidence goes to intent, motive, knowledge, or plan, is relevant, and the potential for unfair prejudice does not outweigh its probative value.  See 404(b) Motion at 9-10.

At the July 28, 2025 Hearing, the United States seeks to admit the following evidence from outside of the Second Superseding Indictment's alleged conspiracy dates: (a) methamphetamine "provided by" Hueriberto Salazar Amaya which subsequently was smuggled into Cibola Correctional; and (b) related jail calls ("additional jail-call evidence").  Hearing Tr. at 33:22-25 (McGinley).[1]  The Second Superseding Indictment alleges that the conspiracy occurs "on or about June 1, 2024, and continuing to on or about April 29, 2025."  Second Superseding Indictment at 4.  The additional jail-call evidence takes place as early as May, 2024, a month before the conspiracy's alleged start date, and as recently as July, 2025, a month after the conspiracy's alleged end date.  See Hearing Tr. at 32:5-33:8 (McGinley).  The United States, therefore, seeks to establish the new dates of the conspiracy as ranging from May 1, 2024, to July 25, 2025.  See Hearing Tr. at 33:5-8 (McGinley).  Martinez objects to the relevance of the new date ranges which are out of the Second Superseding Indictment's alleged date range.  See Hearing Tr. at 33:14-16 (Harrison).

**LAW REGARDING RULE 403 OF THE FEDERAL RULES OF EVIDENCE**

Rule 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

evidence." Fed. R. Evid. 403.  Under rule 403, the trial court must weigh the proffered evidence's probative value against its potential for unfair prejudice.  See United States v. Record, 873 F.2d 1363, 1375 (10th Cir. 1989).  "[I]t is only *unfair* prejudice, *substantially* outweighing probative value, which permits exclusion of relevant matter [under rule 403]."  United States v. Pettigrew, 468 F.3d 626, 638 (10th Cir. 2006)(quoting United States v. Sides, 944 F.2d 1554, 1563 (10th Cir. 1991))(emphasis in United States v. Pettigrew and United States v. Sides).  "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." Deters v. Equifax Credit Info. Servs., Inc., 202 F.3d 1262, 1274 (10th Cir. 2000).  The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." United States v. Smalls, 605 F.3d 765, 787 (10th Cir. 2010).

The decision to admit or exclude evidence pursuant to rule 403 is within the trial court's discretion, see United States v. Lugo, 170 F.3d 996, 1005 (10th Cir. 1999), and the trial court's discretion to balance possible unfair prejudice against probative value is broad, see United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983); United States v. Masters, 622 F.2d 83, 87-88 (4th Cir. 1980).  As the Supreme Court of the United States has noted:

> In deference to a district court's familiarity with the details of the case and its greater experience in evidentiary matters, courts of appeals afford broad discretion to a district court's evidentiary rulings . . . .  This is particularly true with respect to Rule 403 since it requires an "on-the-spot balancing of probative value and prejudice, potentially to exclude as unduly prejudicial some evidence that already has been found to be factually relevant."

Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384 (2008)(citing 1 S. Childress & M. Davis, Federal Standards of Review § 4.02, at 4-16 (3d ed. 1999)).  See United States v. Abel, 469 U.S. 45, 54 (1984)("Assessing the probative value of [proffered evidence], and weighing any

factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 . . . .").

Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response from the jury, or if the evidence otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.  See United States v. Rodriguez, 192 F.3d 946, 951 (10th Cir. 1999).  "Evidence is not unfairly prejudicial merely because it is damaging to an opponent's case."  United States v. Caraway, 534 F.3d 1290, 1301 (10th Cir. 2008)(quoting United States v. Curtis, 344 F.3d 1057, 1067 (10th Cir. 2003)).  Rather, "[t]o be unfairly prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'"  United States v. Caraway, 534 F.3d at 1301 (quoting Fed. R. Evid. 403 advisory committee note)(emphasis in original).  See United States v. Valencia-Montoya, No. CR 11-2990, 2012 WL 8251407, at *11 (D.N.M. September 17, 2012)(Browning, J.)(applying rule 403).

## <u>LAW REGARDING RULE 404(b) OF THE FEDERAL RULES OF EVIDENCE</u>

Under rule 404(b) of the Federal Rules of Evidence, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  The reason for this rule is not that evidence of other crimes is not relevant or probative, but that it is too probative; it violates the Anglo-American principle that a defendant should be tried only for the crime with which he is charged.  See, e.g., People v. Zackowitz, 254 N.Y. 192, 172 N.E. 466, 468 (1930) (Cardozo, J.).  The Court can admit that sort of evidence, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  "In other words, one cannot present evidence the

relevance of which is based on the forbidden inference: the person did X in the past, therefore he probably has a propensity for doing X, and therefore he probably did X this time, too." Wilson v. Jara, No. CIV 10-0797, 2011 WL 6739166, at *5 (D.N.M. November 1, 2011)(Browning, J.).

The Supreme Court has enunciated a four-part test to determine whether evidence is admissible under rule 404(b). See Huddleston v. United States, 485 U.S. 681, 691-92 (1988). The Tenth Circuit has consistently applied that test:

> To determine whether Rule 404(b) evidence was properly admitted we look to [a] four-part test: (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000)("Zamora")(citing United States v. Roberts, 185 F.3d 1125 (10th Cir. 1999)). See United States v. Higgins, 282 F.3d 1261, 1274 (10th Cir. 2002); United States v. Hardwell, 80 F.3d 1471, 1488 (10th Cir. 1996)(citing Huddleston v. United States, 485 U.S. at 691-92).

When bad-act evidence is both relevant and admissible for a proper purpose, "the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the bad act." United States v. Morley, 199 F.3d 129, 133 (3d Cir. 1999)(alterations omitted). The Tenth Circuit has also stated that district courts must "identify specifically the permissible purpose for which such evidence is offered and the inferences to be drawn therefrom." United States v. Youts, 229 F.3d 1312, 1317 (10th Cir. 2000)(citing United States v. Kendall, 766 F.2d 1426, 1436 (10th Cir. 1985)). "[A] broad statement merely invoking or restating Rule 404(b) will not suffice." United States v. Youts, 229 F.3d at 1317. Rules 401-403 and the conditional relevancy rules in rule 104(b) govern

the applicable burden the government must meet to successfully offer evidence under rule 404(b).

See Huddleston v. United States, 485 U.S. at 686-91.

The Advisory Committee added notes to rule 404(b) when the Advisory Committee amended the rule in 2020:

**2020 Amendments**

Rule 404(b) has been amended principally to impose additional notice requirements on the prosecution in a criminal case. In addition, clarifications have been made to the text and headings.

The notice provision has been changed in a number of respects:

The prosecution must not only identify the evidence that it intends to offer pursuant to the rule but also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose. The earlier requirement that the prosecution provide notice of only the "general nature" of the evidence was understood by some courts to permit the government to satisfy the notice obligation without describing the specific act that the evidence would tend to prove, and without explaining the relevance of the evidence for a non-propensity purpose. This amendment makes clear what notice is required.

The pretrial notice must be in writing -- which requirement is satisfied by notice in electronic form. See Rule 101(b)(6). Requiring the notice to be in writing provides certainty and reduces arguments about whether notice was actually provided.

Notice must be provided before trial in such time as to allow the defendant a fair opportunity to meet the evidence . . . .

Fed. R. Evid. 404(b) Advisory Committee Notes 2020 Amendments. See United States v. Ferguson, No. CR 19-3121, 2020 WL 5849683, at *1 (D. Neb. October 1, 2020)(Gerrad, J.)("The government must also articulate the permitted purpose for the evidence and the reasoning supporting the purpose, and do so in writing before trial.").

## ANALYSIS

First, the Court looks at each of the United States' six proffered groupings of telephone conversations and determines whether they are admissible as evidence. The Court concludes that all of the statements are admissible as res gestae intrinsic evidence, and even if a rule 404(b) analysis applies, the statements are also admissible. Second, the Court deems Martinez' prior conviction inadmissible, even though the United States does not move to admit it that evidence. Third, the Court allows the United States to amend the conspiracy charge's dates and admits new evidence from the new dates. Finally, the Court concludes that Martinez has sufficient notice of the new evidence because rule 404(b)'s notice requirement does not apply, but even if it does, Martinez has enough time to prepare a response to the new evidence.

## I.    THE COURT ADMITS THE JAIL CALL STATEMENTS UNDER RES GESTAE INTRINSIC EVIDENCE AND, IN THE ALTERNATIVE, 404(B) EVIDENCE OF MOTIVE, INTENT, AND PLAN.

First, evidence of the charged offenses or evidence that is "intrinsic" to the crime, i.e., it completes the story of the crime, is admissible so long as it is relevant under rule 401 and not unduly prejudicial under rule 403. See United States v. Lambert, 995 F.2d 1006, 1007-08 (10th Cir. 1993). Evidence is intrinsic when it is "inextricably intertwined" with evidence of the charged offenses, arises from the same criminal episode, or is necessary to complete the story of the crime. United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011). Rule 404(b) does not govern such evidence. See United States v. O'Brien, 131 F.3d 1428, 1432 (10th Cir. 1997). Rule 404(b) governs, however, "other" acts or crimes that are neither evidence nor intrinsic evidence -- they are extrinsic evidence. United States v. Pace, 981 F.2d 1123, 1135 (10th Cir. 1992), abrogated on other grounds as recognized in United States v. Bell, 154 F.3d 1205, 1209-10 (10th Cir. 1998). Rule 404(b) permits admission of other-act evidence that proves "motive, opportunity, intent,

preparation, plan, knowledge, identity, absence of mistake, or lack of accident" while prohibiting admission of other-act evidence that proves "a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b). For evidence to be admissible under rule 404(b): (i) the evidence's proponent must offer the evidence for a proper purpose under rule 404(b); (ii) the evidence must be relevant; and (iii) the evidence's potential for unfair prejudice must not substantially outweigh its probative value. See Huddleston v. United States, 485 U.S. 681, 691-92 (1988); United States v. Diaz, 679 F.3d 1183, 1190 (10th Cir. 2012).

The Court discusses each of the United States' six proffered groupings of telephone conversations between Martinez and Sedillo while Sedillo is incarcerated at Cibola Correctional. For each grouping, the Court first analyzes whether the statement is admissible as evidence for the United States' case-in-chief or res gestae intrinsic evidence. The Court also analyzes whether the statements are admissible under rule 404(b) if the statements are "other" acts so that rule 404(b) applies.

### A.    THE MARCH, 2025 CALLS REGARDING BODY-PACKAGING DRUGS FOR SMUGGLING INTO CIBOLA CORRECTIONAL ARE ADMISSIBLE.

On March 16, 2025, Sedillo (from Cibola Correctional), called Martinez at phone number ***-***-6594 and asked Martinez if Martinez could show Sedillo's wife, M.T., how to make a package "like a dildo." Agents will testify that it is common to smuggle contraband into jail through body cavities to avoid detection. Martinez agreed and told Sedillo he would wait for M.T.'s call. Calls on either side of this conversation provide necessary context. Immediately prior to the call between Sedillo and Martinez, Sedillo had spoken with M.T. about putting together "care packages" of "amber" -- a common slang term for THC wax. Sedillo instructed her to body-pack the drugs to smuggle them into the jail. And after the Sedillo/Martinez call, M.T. confirmed in a separate conversation with Sedillo that she had successfully packaged the drugs. Sedillo instructed her to drop it off with another co-conspirator, "H.," later that night. Over the following two days, Sedillo communicated to M.T. that there was an "issue" with H. bringing the drugs -- now referred to with the code term "wedding ring"-- and so M.T. agreed to bring them instead on the following Thursday.

404(b) Motion at 3.

First, this is not admissible as evidence that Martinez commits the charged crime because, whereas Martinez' charged offenses involve a drug trafficking conspiracy outside of the Cibola Correctional, this call between Martinez and Sedillo concerns smuggling drugs into the Cibola Correctional. Second, however, this evidence is res gestae intrinsic evidence, because the calls between Martinez and Sedillo concern drug trafficking operations and execution. While the specific drugs and the trafficking locations are different from those in the charged offenses, the scheme evident here comprises the story necessary to understand Martinez' role in the charged offenses. See United States v. Becker, 230 F.3d 1224, 1232 (10th Cir. 2000)(holding that a defendant's prior involvement with drugs may be admitted to show his intent for a drug trafficking charge); United States v. Garcia, 596 F.3d 788, 797 (10th Cir. 2010)(holding that 404(b) evidence of a defendant's May 2007 drug sale is offered for the proper purpose of proving the defendant's "specific intent to distribute the drugs found in" a friend's apartment in June, 2007). Third, even if this evidence is not res gestae intrinsic evidence, it is admissible under rule 404(b) for several reasons. The evidence shows Martinez' knowledge of how drugs are packaged and smuggled. The evidence shows Martinez' motive to be involved in drug trafficking activity similar to that of the charged offenses. The evidence also shows Martinez' planning of drug trafficking activities with his co-conspirators, including his co-Defendant in this case, Sedillo.

The evidence is relevant, because the evidence concerns drug trafficking activity between Martinez and Sedillo, who are two of the Defendants in this case. Under rule 403, no prejudicial effect outweighs this evidence's probative value.

### B.    THE APRIL 5, 2025 CALL REGARDING A CAR REPAIR THAT USES TERMINOLOGY FOR METHAMPHETAMINE IS ADMISSIBLE.

On April 5, 2025, Sedillo called Martinez at phone number \*\*\*-\*\*\*-6594 asking for the "final count." Martinez responded, "For your App, there was $60 on there, now it's $795, so there's $855 total." Martinez stated, "Let me know what's next." Sedillo stated, "Paint and body." Martinez asked, "Just the window, or do you want to replace the bucket seats too?" Sedillo replied, "Yeah, I want to replace the bucket seats as well . . . I was thinking the driver's and passenger's seat is like $300 bucks, and then, just replace the window, you feel me?" Martinez stated, "Just one window?" Sedillo said, "Yes . . . then later on we'll just get rid of that car." Sedillo later stated he was "good" because his last check is $1,200 or $1,300 and it needed to be deposited into his bank account. Agents will testify that "window" is a common slang term for a pound of methamphetamine, and that the prices in the call ($1,200 or $1,300) are also consistent with prices for a pound of methamphetamine.

404(b) Motion at 3-4.

First, this is not admissible as evidence that Martinez commits the charged crime because this conversation does not go to the charged offenses. Second, however, this evidence is res gestae intrinsic evidence, because it shows that Martinez and Sedillo are coordinately actively drug transactions. The coded language of "window" and the cash amounts consistent with methamphetamine prices comprises the story necessary to understand Martinez' role in the charged offenses. This evidence's discussion of drug trafficking transactions is inextricably intertwined with the drug trafficking operations in the charged offenses. See United States v. Becker, 230 F.3d at 1232; United States v. Garcia, 596 F.3d at 797. Third, even if this evidence is not res gestae intrinsic evidence, it is admissible under rule 404(b) for several reasons. The evidence shows Martinez' knowledge of methamphetamine terminology and pricing. The evidence shows Martinez' intent and motive to be involved in drug trafficking activity similar to that of the charged offenses. The evidence also shows Martinez' planning of drug trafficking activities with his co-conspirators, including his co-Defendant in this case, Sedillo.

- 12 -

The evidence is relevant, because the evidence concerns drug trafficking planning between Martinez and Sedillo, who are two of the Defendants in this case.  Under rule 403, no prejudicial effect outweighs this evidence's probative value.

### C.    THE APRIL 15, 2025 CALL REGARDING CALL REPAIRS THAT USE TERMINOLOGY FOR METHAMPHETAMINE AND MARIJUANA IS ADMISSIBLE.

On April 15, 2025, Sedillo called Martinez at phone number ***-***-6594. Martinez reported that he was going to start working on his car, but he wanted to talk to the mechanic.  Martinez stated that instead of getting just one window replaced, he had to replace all of the windows.  Sedillo said they can hold off on the windows, and at the end of the day, he just wants to get "Pink, Eddie, and Bondo" done.  Sedillo stated he wanted to get "like 300 involved of paint," be he wanted a "gloss paint."  Martinez asked if Sedillo wanted "green." Sedillo said it really didn't matter, whatever Martinez thinks is best.  He said it would be ideal if Martinez could get M.T. to buy the paint tomorrow.  Martinez stated the seats were ready, but he was not sure he understood about the paint.  Sedillo said the seats were all they could do now, but down the line they would do a color match. Martinez changed the topic back to the windows and stated it was not that he couldn't get them replaced.  Sedillo said it's okay because he already had the "Ford Focus" in mind and the window just got replaced in it.  He said it was not like they didn't have a car for the auction.  He was just lacking the gas money.  Sedillo told Martinez he should always have a few hundred dollars for gas money to get the car to auction.  Agents will testify that this conversation is consistent with Sedillo and Martinez arranging a drug transaction involving methamphetamine (windows) and marijuana (green), to be smuggled into Cibola Correctional by M.T.

404(b) Motion at 4.

First, this is not admissible as evidence that Martinez commits the charged crime because whereas Martinez' charged offenses involve a drug trafficking conspiracy outside of the Cibola Correctional, this call between Martinez and Sedillo concerns smuggling drugs into the Cibola Correctional.  Second, however, this evidence is res gestae intrinsic evidence, because the calls between Martinez and Sedillo concern drug trafficking operations and execution.  While the specific drugs and the trafficking locations are different from those in the charged offenses, the scheme evident here comprises the story necessary to understand Martinez' role in the charged

offenses.  At this point, Martinez and Sedillo have a shared vocabulary of coded language for drug

dealing.  See United States v. Becker, 230 F.3d at 1232 (holding that a defendant's prior

involvement with drugs may be admitted to show his intent for a drug trafficking charge); United

States v. Garcia, 596 F.3d 788, 797 (holding that 404(b) evidence of a defendant's May 2007 drug

sale is offered for the proper purpose of proving the defendant's "specific intent to distribute the

drugs found in" a friend's apartment in June, 2007).  Third, even if this evidence is not res gestae

intrinsic evidence, it is admissible under rule 404(b) for several reasons.  The evidence shows

Martinez' knowledge of coded terminology for methamphetamine and marijuana.  The evidence

shows Martinez' motive to be involved in drug trafficking activity similar to that of the charged

offenses.  The evidence also shows Martinez' planning of drug trafficking activities with his co-

conspirators, including his co-Defendant in this case, Sedillo.

     The evidence is relevant, because the evidence concerns drug trafficking planning between

Martinez and Sedillo, who are two of the Defendants in this case, and shows that Martinez plays a

key role in executing a drug trade.  Under rule 403, no prejudicial effect outweighs this evidence's

probative value.

### D.   THE APRIL 20, 2025 CALL REGARDING A CAR AUCTION THAT ALLEGEDLY REFERS TO A DRUG SMUGGLING EVENT IS ADMISSIBLE.

     On April 20, 2025, Sedillo called Martinez at phone number ***-***-6594 and asked Martinez to conduct a FaceTime call with M.T. to "show her how to wrap the stuff."  Sedillo told Martinez that nothing had been done to "the car" since they picked it up at his house, and it was supposed to be to "auction" tomorrow. Martinez said his car was ready to go.  Sedillo agreed but said he had to get someone else's car to "the auction" as well.  Martinez said he'd already shown M.T. how to do this, but he would do it again.  A short time later, Sedillo called M.T. to check if she had spoken with Martinez.  M.T. reported that she wouldn't talk to Martinez because he talks to her like she is stupid.  She assured Sedillo it would get done, and Sedillo said if the car is not at "auction," he could get beat up.  He also instructed her to "fold the papers" and "make sure everything is sealed so no envelope can get in and nothing can get out of the envelope."  Agents will testify

that these conversations are consistent with Sedillo and Martinez continuing to use
"car auction" code words to discuss an upcoming drug smuggling attempt by M.T.

404(b) Motion at 5.

First, this is not admissible as evidence that Martinez commits the charged crime because this conversation does not go to the charged offenses. Second, however, this evidence is res gestae intrinsic evidence, because the calls between Martinez and Sedillo, and the related conversations between Sedillo and M.T., concern drug trafficking operations and execution. Here, Martinez and Sedillo talk briefly about how to package the drugs for a smuggling attempt. Martinez and Sedillo continue to share coded language for the specific drug smuggling attempt, describing it as an "auction." Third, even if this evidence is not res gestae intrinsic evidence, it is admissible under rule 404(b) for several reasons. The evidence shows Martinez' motive to be involved in and play a key role in drug trafficking activity similar to that of the charged offenses. The evidence also shows Martinez' planning of drug trafficking activities with his co-conspirators, including his co-Defendant in this case, Sedillo.

The evidence is relevant, because the evidence concerns drug trafficking planning between Martinez and Sedillo, who are two of the Defendants in this case, and shows that Martinez plays an active role in executing a drug trade by showing M.T. how to "wrap" the drugs for smuggling. Under rule 403, no prejudicial effect outweighs this evidence's probative value.

### E.    THE APRIL 24, 2025 CALL ALLEGEDLY PLANNING A DELIVERY OF DRUGS, INCLUDING METHAMPHETAMINE, IS ADMISSIBLE.

On April 24, 2025, Sedillo called Martinez at phone number ***-***-6594. Martinez asked if it was "raining or dry" in there. Sedillo replied, "Fuck no" and reported one of his "homies" went to the "hole" for a month. Agents will testify that this conversation is consistent with Sedillo reporting on the flow of drugs through Cibola Correctional. Martinez then asked what was going on with "the car" that they had previously been discussing. Sedillo reported he had gotten that last car to the auction, "so that was a good one." He said he was able to sell that car and get another car and now was just waiting on the auction. Sedillo estimated it

would be in less than a week. Martinez asked if Sedillo had a tow truck driver to deliver the car, and Sedillo reported someone with a CDL was going to deliver it themselves. Finally, Martinez said he got the "window." Sedillo instructed Martinez to put it aside. Agents will testify that this conversation is consistent with Sedillo reporting that he had been able to sell the drugs that Martinez, M.T., and Sedillo had previously discussed, and that he was planning another upcoming delivery of drugs, to potentially include the methamphetamine (window) that Martinez had acquired.

404(b) Motion at 5-6.

First, this is not admissible as evidence that Martinez commits the charged crime because whereas Martinez' charged offenses involve a drug trafficking conspiracy outside of the Cibola Correctional, this call between Martinez and Sedillo concerns smuggling drugs into the Cibola Correctional. Second, however, this evidence is res gestae intrinsic evidence, because the calls between Martinez and Sedillo concern drug trafficking operations and execution. It shows that Martinez and Sedillo are coordinately actively drug transactions. The evidence's discussion of drug trafficking transactions is thus "inextricably intertwined" with the charged offenses. United States v. Irving, 665 F.3d at 1212. Third, even if this evidence is not res gestae intrinsic evidence, it is admissible under rule 404(b) for several reasons. The evidence shows Martinez' knowledge of drug trafficking given his use of the coded language of "window" and auction terminology to discuss a drug smuggling attempt in the Cibola Correctional. This evidence completes the story necessary to understand Martinez' role in the charged offenses, which generally concern a drug trafficking conspiracy. The evidence shows Martinez' intent and motive to be involved in drug trafficking activity similar to that of the charged offenses. The evidence also shows Martinez' planning of drug trafficking activities with his co-conspirators, including his co-Defendant in this case, Sedillo.

The evidence is relevant, because the evidence concerns drug trafficking planning between Martinez and Sedillo, who are two of the Defendants in this case. Under rule 403, no prejudicial effect outweighs this evidence's probative value.

> **F.    THE MARCH AND APRIL, 2025 CALLS REGARDING PAYMENTS TO THIRD PARTIES ALLEGEDLY FOR THE SALE OF DRUGS ARE ADMISSIBLE.**
>
> There are additional calls between Sedillo and Martinez on March 28, 2025; April 5, 2025; April 9, 2025; and April 24, 2025, regarding payments to third parties. For example, on April 9, 2025, Sedillo called Martinez at ***-***-6594 and asked if Martinez still had $500 on that "green button." Martinez confirmed, and Sedillo asked Martinez to send $500 on his behalf to ***-***-4142 with the note "R16." Martinez then confirmed he had sent this money. In the context of the other calls detailed and the broader investigation into Sedillo, agents will testify that these conversations are consistent with Martinez helping Sedillo pay third parties through a peer-to-peer platform (i.e., CashApp) to assist in Sedillo's jail-smuggling scheme.

404(b) Motion at 6.

The final statement that the United States proffers is admissible for all of the same reasons as the above statements. First, this is not admissible as evidence that Martinez commits the charged crime because it does not go to the charged offenses. Second, however, this evidence is res gestae intrinsic evidence, because the calls between Martinez and Sedillo concern drug trafficking payments. It shows that Martinez and Sedillo have executed successfully drug trades in the Cibola Correctional and are transferring cash payments to third parties. The evidence's discussion of drug trafficking payments is thus "inextricably intertwined" with the charged offenses, which concern Martinez' involvement in a large-scale drug trafficking conspiracy. United States v. Irving, 665 F.3d at 1212. Third, even if this evidence is not res gestae intrinsic evidence, it is admissible under rule 404(b) for several reasons. The evidence shows Martinez' motive, intent, and plan of committing drug trafficking, from successfully executing a drug smuggling operation into Cibola Correctional. This evidence completes the story necessary to understand Martinez' role in the

charged offenses, which generally concern a drug trafficking conspiracy.  The evidence also shows Martinez' planning of drug trafficking activities with his co-conspirators, including his co-Defendant in this case, Sedillo.

The evidence is relevant, because the evidence concerns drug trafficking planning between Martinez and Sedillo, who are two of the Defendants in this case.  Under rule 403, no prejudicial effect outweighs this evidence's probative value.

## II.   THE COURT EXCLUDES MARTINEZ' PRIOR CONVICTION UNDER RULE 403, BECAUSE THE EVIDENCE'S PREJUDICAIL EFFECT OUTWEIGHS <u>ITS PROBATIVE VALUE.</u>

While the United States does not submit evidence of Martinez' prior conviction for Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(5), the United States mentions the prior conviction in the 404(b) Motion.  <u>See</u> Motion at 1.  The Court excludes evidence of Martinez' prior conviction under rule 403.  For starters, the prior conviction is not evidence of the charged offenses, namely drug trafficking conspiracy.  Nor is the prior conviction res gestae intrinsic evidence of the charged offense, because it occurs at an entirely different time, place, and context.  As for applying rule 404(b) and its required analysis of 403, the Court concludes that the prejudicial effect of the prior conviction outweighs its probative value.  The Court cannot think of any probative value in the fact that Martinez is a felon who possesses a firearm to the drug trafficking conspiracy in this case.  Any connection between the prior conviction and the charged offenses is paper-thin.  Even if there is minimal probative value in that Martinez' unlawful possession of a firearm shows that he has knowledge of and motive to commit criminal activities, the prejudicial effect is overwhelming.  Here, a jury likely could draw an improper inference that Martinez commits the charged offense, because he has committed offenses in the past.  The Court,

therefore, excludes evidence of Martinez' prior conviction for Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(5).

## III.    THE COURT ALLOWS THE UNITED STATES TO AMEND THE CONSPIRACY CHARGE'S DATES AND ADMITS ADDITIONAL EVIDENCE FROM THE NEW DATES.

The United States seeks to: (i) establish the new dates of the conspiracy as ranging from May 1, 2024, to July 25, 2025, see Hearing Tr. at 33:5-8 (McGinley); and (ii) admit the following evidence from outside of the Second Superseding Indictment's alleged conspiracy dates: (a) methamphetamine "provided by" Heriberto Salazar Amaya which subsequently was smuggled into Cibola Correctional; and (b) related jail calls ("additional jail-call evidence").  Hearing Tr. at 33:22-25 (McGinley).  The Second Superseding Indictment alleges that the conspiracy occurs "on or about June 1, 2024, and continuing to on or about April 29, 2025."  Second Superseding Indictment at 4.  The additional jail-call evidence takes place as early as May, 2024, a month before the conspiracy's alleged start date, and as recently as July, 2025, a month after the conspiracy's alleged end date.  See Hearing Tr. at 32:5-33:8 (McGinley).  Martinez objects to the relevance of the new date ranges which are out of the Second Superseding Indictment's alleged date range.  See Hearing Tr. at 33:14-16 (Harrison).

First, the Court addresses whether the United States can prove a continuous conspiracy that extends from May, 2024 into July, 2025, despite the immutability of the Second Superseding Indictment's narrower date range between June 2024 and April 2025.  See Second Superseding Indictment at 4.  In some circumstances, the United States Court of Appeals for the Tenth Circuit permits the United States partially to amend indictments, rather than to file superseding indictments, depending on the amendment's form or substance.  For example, in United States v. Stegman, 873 F.3d 1215, 1224 (10th Cir. 2017), the Tenth Circuit permits an amendment

correcting the name of the defendant's business in a financial crimes prosecution.  See 873 F.3d at 1224.  There, the Tenth Circuit explains that fixing the typographical error "did not mislead [her] in any sense, did not subject her to any added burdens, and did not otherwise prejudice her in any way."  United States v. Stegman, 873 F.3d at 1224.  On the other hand, however, the Tenth Circuit also denies an indictment amendment in a case where the United States seeks to change the tax fraud count's alleged year from 1984 to 1985.  See United States v. Pina, 974 F.2d 1241, 1243 (10th Cir. 1992).  There, the Tenth Circuit concludes that changing the count's year to 1985 is, "at this point in the trial," an amendment "of substance rather than form, and thus it was impermissible."  United States v. Pina, 974 F.2d at 1243.  The court additionally notes an amendment's "possible prejudice" because the defendant is not informed adequately of any charge about his 1985 taxes, and the United States assures the defense counsel that the count is for 1984 and that the 1985 tax return is not at issue.  See United States v. Pina, 974 F.2d at 1243.

Here, extending the conspiracy charge's dates one month earlier and one month later, specifically, to admit the additional jail-call evidence, falls between the United States v. Stegman to United States v. Pina's form-versus-substance spectrum.  Extending the conspiracy charge's dates is beyond the mere typographical error in United States v. Stegman, but adding two months is not as drastic as altering the relevant tax return year in United States v. Pina.  The Court concludes that extending a conspiracy charge's dates by two months is a substantive change, but not enough to cause prejudice.  The extension is modest.  The extension does not introduce new or unrelated conduct.  Rather, the extension allows the United States to present additional jail-call evidence, which is a continuation of the original jail calls that are evidence of Martinez' charged drug trafficking conspiracy.  Martinez' ability to prepare a defense is the same as it is for the original conspiracy dates, and thus Martinez is not prejudiced by extending the conspiracy charge's

dates from May, 2024 to July, 2025.

As for the admissibility of the additional jail-call evidence to show the charged Conspiracy, the Court considers it admissible as intrinsic evidence. The additional jail-call evidence continues the original jail calls about the Cibola Correctional drug deal between Martinez and Sedillo, which are res gestae intrinsic evidence of the charged conspiracy. See supra at 9. Second, the evidence is relevant, because the evidence concerns drug trafficking activity between Martinez and Sedillo, who are two of the Defendants in this case. Third, under rule 403, there is no prejudicial effect here. Evidence of drug dealing that occurs within the charged conspiracy's timeline, to which this additional jail-call evidence goes, has high probative value. The additional jail-call evidence's high probative value thus outweighs the evidence's prejudicial effect. No unfair prejudice results.

## IV.    **MARTINEZ HAS SUFFICIENT NOTICE OF THE EVIDENCE.**

Martinez argues that the United States provides improper notice of the additional jail-call evidence under rule 404(b). Martinez contests that the United States does not disclose the additional jail-call evidence that occurs outside the indictment's charged conspiracy dates until Saturday, July 26, 2025, which is only two days before the first day of trial on Monday, July 28, 2025. See Hearing Tr. at 181:6-22 (Hart). The United States moves to admit the evidence of "recorded telephone conversations and text messages," between Martinez and Sedillo, which includes the additional jail-call evidence. See United States' Opposed Motion in Limine to Admit Transcripts of Recorded Telephone Conversations and Text Messages, filed July 26, 2025 (Doc. 445)("Motion in Limine"). The United States provides notice of the original jail calls in two earlier filings: (i) Notice of Intent and Motion to Introduce Evidence of Coconspirator Statements Under Fed. R. Evid. 801(d)(2)(E), filed July 18, 2025 (Doc. 400)("Notice"); and (ii) First Amended Notice of Intent and Motion to Introduce Evidence of Coconspirator Statements Under Fed. R.

Evid. 801(d)(2)(E), filed July 19, 2025 (Doc. 405)("Amended Notice").  The United States argues that the Notice and Amended Notice encompass the additional jail-call evidence.  See Hearing Tr. at 184:1-9 (McGinley).  Martinez contends that, however, the Notice and Amended Notice do not encompass the additional jail-call evidence.  See Hearing Tr. at 182:15-23 (Hart).

Rule 404(b) requires the United States to give notice of its intent to use evidence of other acts to reduce surprise and promote early resolution on the issue of admissibility.  See James J. Duane & Glen Weissenberger, Weissenberger's Federal Evidence § 404.21.  The notice requirement' purpose is to prevent unfair surprise, and make it easier for the defendant to obtain a pretrial in limine ruling on other-acts evidence.  See Stephen A. Salzberg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 404.02[22].  The notice requirement does not apply, however, to other acts of misconduct that are intrinsic, i.e., part of the charged offense. In United States v. Mahdi, 598 F.3d 883 (D.C. Cir. 2010), the district court admits evidence that a drug conspiracy defendant threatens to use a knife even without pretrial notification to the defense. See 598 F.3d at 890-91.  There, the United States Court of Appeals for the D.C. Circuit concludes that, because the evidence shows the defendant's organizational management and how he keeps his subordinates, i.e., "worker bees," in line, it is therefore "intrinsic" evidence of the charged offense for which he is on trial.  598 F.3d at 891.  The United States, therefore, need not provide notice of the intrinsic evidence.  See United States v. Mahdi, 598 F.3d at 890-91.  Here, like the intrinsic evidence in United States v. Mahdi that shows the defendant's organizational management tactics as part of a drug conspiracy, the evidence of Martinez' jail calls with Sedillo shows that Martinez executes drug trades within an overarching drug trafficking conspiracy. Because the additional jail-call evidence is intrinsic to Martinez' charged offenses, 404(b)'s notice

requirement does not apply.  The Court, therefore, concludes that the United States' notice is proper.

Even if the additional jail-call evidence is extrinsic evidence such that rule 404(b) applies, Martinez has sufficient notice.  Under rule 404(b), the United States must provide reasonable notice of any evidence of other crimes that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it.  Fed. R. Evid. 404(b)(3)(A).[2]  404(b) does not specify what constitutes reasonable notice, other than requiring that the "defendant ha[ve] a fair opportunity to meet" the evidence." 2 Weinstein's Federal Evidence § 404.23.  The Court concludes that, even if the United States' Notice and Amended Notice's filed July 18 and 19, 2025 do not provide Martinez notice of the additional jail-call evidence, Martinez has a reasonable amount of time to digest and respond to the new evidence which the United States discloses two days before trial begins.  At the hearing, the Court suggests that the United States delay introducing the evidence so that Martinez has time to digest and respond.  See Hearing Tr. at 187:17-21 (Court).  As of this Memorandum Opinion and Order's filing, at the end of day five of the trial, the United States has still not introduced the additional jail-call evidence -- marking a week since the initial disclosure on July 25, 2025.  Moreover, the new evidence is a continuation of the original jail cell calls, so the United States does not surprise unduly Martinez when introducing it.  The Court, therefore, overrules Martinez' objection.

**IT IS ORDERED** that: (i) the requests in the United States' Notice of Intent to Introduce Evidence Pursuant to Federal Rule of Evidence 404(b) and *Res Gestae*, filed July 19, 2025 (Doc. 402), are granted; (ii) the United States' request at the July 28, 2025 Hearing to admit evidence of

---

[2]In the notice, the United States must articulate a non-propensity purpose and reasoning for the proffered evidence, and the notice must be in writing.  See Fed. R. Evid. 404(b)(3)(B)-(C). Martinez does not, however, raise issues regarding these notice requirements.

Defendant Alex Anthony Martinez' prior conviction is denied;  (iii) the United States' request at the July 28, 2025 Hearing to amend the dates of the charged conspiracy is granted; (iv) the United States' request at the July 28, 2025 Hearing to admit additional jail-call evidence is granted; and (v) Martinez' objection at the July 28, 2025 Hearing that he does not receive sufficient notice of the additional jail-call evidence is overruled.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Ryan Ellison
   United States Attorney
Louis C. Mattei
Elaine Y. Ramirez
Raquel Ruiz-Velez
Matthew J. McGinley
Blake Nichols
   Assistant United States Attorney
Albuquerque, New Mexico

        *Attorneys for the Plaintiff*

Megan Kathleen Mitsunaga
Law Office of Megan Mitsunaga
Albuquerque, New Mexico

-- and --

Michael Vincent Severo
The Severo Law Firm
Pasadena, California

        *Attorneys for the Defendant Heriberto Salazar Amaya*

Marshall J. Ray
Law Offices of Marshall J. Ray
Albuquerque, New Mexico

    *Attorney for the Defendant Cesar Acuna-Moreno*

Paul Linnenburger
Lane Linnenburger Lane LLP
Albuquerque, New Mexico

    *Attorney for the Defendant Bruce Sedillo*

Susan L Burgess-Farrell
Burgess & Porter LLC
Albuquerque, New Mexico

    *Attorney for the Defendant Vincent Montoya*

Jon K Stanford
The Law Office of Jon Stanford
Albuquerque, New Mexico

    *Attorney for the Defendant Francisco Garcia*

Diego R. Esquibel
Esquibel Law Firm, PA
Albuquerque, New Mexico

    *Attorney for the Defendant David Anesi*

Phillip G Sapien
Sapien Law, LLC
Albuquerque, New Mexico

    *Attorney for the Defendant George Navarrete-Ramirez*

Carter Harrison
Nicholas T. Hart
Harrison & Hart, LLC
Albuquerque, New Mexico

    *Attorneys for the Defendant Alex Anthony Martinez*

Timothy Wilson Cornish
Albuquerque, New Mexico

    *Attorney for the Defendant Jose Luis Marquez*

Thomas M. Clark
Clark and Jones, LLC
Albuquerque, New Mexico

    *Attorney for the Defendant Nicholas Tanner*

John C. Anderson
Holland & Hart LLP
Santa Fe, New Mexico

    *Attorney for the Defendant Brian Sanchez*

Carey Bhalla
Roshanna K Toya
Rothstein Donatelli LLP
Albuquerque, New Mexico

    *Attorneys for the Defendant Kaitlyn Young*

Joseph E. Shattuck
Marco and Shattuck Law Firm
Albuquerque, New Mexico

    *Attorney for the Defendant Alan Singer*

Gregory M. Acton
Acton Law Office PC
Albuquerque, New Mexico

    *Attorney for the Defendant David Altamirano Lopez*

Mallory Margaret Gagan
Gagan Law, LLC
Albuquerque, New Mexico

    *Attorney for the Defendant Roberta Herrera*

M. Naomi Salazar
M. Naomi Salazar, Attorney at Law
Albuquerque, New Mexico

*Attorney for the Defendant Misael Lopez-Rubio*