# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                          No. CR 25-0879-008 JB

HERIBERTO SALAZAR-AMAYA, a.k.a.
"HSA," "Juan," "El Paisa," "Viejo," "Heriberto
Salazar-Torres," "Gabriel Gomez-Torres," and
"Pedro Gomez-Diaz," CESAR ACUNA-
MORENO, a.k.a. "Pollo," BRUCE SEDILLO,
a.k.a. "YG" and "Youngster," VINCENT
MONTOYA, a.k.a. "La Gringa" and "Guilt,"
FRANCISCO GARCIA, a.k.a. "Pancho,"
DAVID ANESI, GEORGE NAVARRETE-
RAMIREZ, a.k.a. "Pantera" and "Panther,"
ALEX ANTHONY MARTINEZ, a.k.a. "Bow,"
"Bose," and "Volt," JOSE LUIS MARQUEZ,
NICHOLAS TANNER, BRIAN SANCHEZ,
KAITLYN YOUNG, a.k.a. "La de la moto,"
ALAN SINGER a.k.a. "El de la moto," DAVID
ALTAMIRANO-LOPEZ, a.k.a. "Yogi,"
ROBERTA HERRERA, and MISAEL LOPEZ-
RUBIO, a.k.a. "Bruno."

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

     **THIS MATTER** comes before the Court on the Defendant's Motion to Suppress, filed

July 7, 2025 (Doc. 301)("Suppression Motion"). The Court held a hearing on July 21, 2025. <u>See</u>

Clerk's Minutes, filed July 21, 2025; Transcript of Hearing at 1 (taken July 21, 2025)("Tr.").[1] The

primary issues are: (i) whether a search warrant to search Defendant Alex Anthony Martinez'

home is invalid, because the supporting affidavit lacks probable cause; and (ii) whether the Court

---

[1]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version. Any final transcript may contain slightly different page and/or line numbers.

should suppress cellular telephone and cash evidence that the United States obtains.  See Suppression Motion at 1.  The Court concludes that the supporting affidavit sets forth sufficient probable cause.  The Court, therefore, denies Martinez' Suppression Motion.

## FACTUAL BACKGROUND

Rule 12(d) of the Federal Rules of Criminal Procedure requires that the Court state its essential findings on the record when deciding a motion that involves factual issues.  See Fed. R. Crim. P. 12(d)("When factual issues are involved in deciding a motion, the court must state its essential findings on the record.").  The findings of fact in this Memorandum Opinion and Order serve as the Court's essential findings for rule 12(d)'s purposes.  The Court makes these findings under the authority of rule 104(a) of the Federal Rules of Evidence, which requires a judge to decide preliminary questions relating to the admissibility of evidence, including the legality of a search or seizure.  See United States v. Merritt, 695 F.2d 1263, 1269-70 (10th Cir. 1982).  In deciding such preliminary questions, the other Federal Rules of Evidence, except those with respect to privileges, do not bind the Court.  See Fed. R. Evid. 104(a)("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible.  In so doing, the court is not bound by evidence rules, except those on privilege.").  Thus, the Court may consider hearsay in ruling on a motion to suppress.  Additionally, the United States Court of Appeals for the Tenth Circuit has indicated that the restrictions in the Confrontation Clause of the Sixth Amendment to the Constitution of the United States does not apply to hearsay introduced in suppression hearings, so the Court may consider testimonial statements.  See United States v. Lopez-Carillo, 536 F. App'x 762, 768-69 (10th Cir. 2013)(unpublished)[2]("[T]he Supreme

_____

[2]United States v. Lopez-Carillo, 536 F. App'x 762 (10th Cir. 2013), is an unpublished opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned

Court has made it clear hearsay is admissible in suppression hearings . . . . As a result, the restriction in the Confrontation Clause against admission of testimonial statements . . . is not implicated here." (citing United States v. Matlock, 415 U.S. 164, 172-77 (1974); United States v. Sanchez, 555 F.3d 910, 922 (10th Cir. 2009); and United States v. Miramonted, 365 F.3d 902, 904 (10th Cir. 2004)).   Here, the Court makes findings of fact in reliance on Drug Enforcement Administration ("DEA") Special Agent David Zimmerman's Affidavit, see Affidavit In Support of An Application Under Rule 41 For A Warrant to Search and Seize (dated May 2, 2025), filed July 7, 2025 (Doc. 301-2)("Zimmerman Aff."), which supports the search warrant for Martinez' residence, see Application for a Warrant by Telephone or Other Reliable Electronic Means (dated May 2, 2025), filed July 7, 2025 (Doc. 301-1)("Warrant").

## FINDINGS OF FACT

The Court makes findings of fact regarding: (i) Martinez' charges and case statuses; (ii) the investigation into Martinez' involvement in the case; and (iii) the search of Martinez' house and cellular telephone.

1.   **Martinez' Charges**.

1.       On February 5, 2021, Martinez is arrested for being a Convicted Felon in

---

analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit states:

In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored . . . . However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).  The Court concludes that United States v. Lopez-Carillo has persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion and Order.

Possession of a Firearm and Ammunition.  See United States v. Alex Anthony Martinez, No. CR 21-0310 DHU, Pretrial Services Report at 1, filed December 23, 2024 (Doc. 87).  See also Zimmerman Aff. ¶ 32, at 18.

2.       On February 24, 2021, Martinez is on pretrial release.  See United States v. Alex Anthony Martinez, No. CR 21-0310 DHU, Pretrial Services Report at 1.  See also Zimmerman Aff. ¶ 32, at 18.

3.       On April 24, 2025, Martinez is indicted in the District of New Mexico for violating 21 U.S.C. §§ 841(a)(1) and 846.  See Indictment at 1, filed April 24, 2025 (Doc. 25).  See also Superseding Indictment at 1, filed June 25, 2025 (Doc. 224).

4.       On April 30, 2025, United States Probation Officer Jacob Gomez files a violation of pretrial release conditions pursuant to 18 U.S.C. § 3148.  See United States v. Alex Anthony Martinez, No. CR 21-0310 DHU, Petition for Action on Conditions of Release as to Alex Martinez at 1, filed April 30, 2025 (Doc. 94).  See also Zimmerman Aff. ¶ 34, at 18.

5.       The Honorable Jennifer M. Rozzoni, United States Magistrate Judge for the United States District Court for the District of New Mexico, issues an arrest warrant for Martinez' arrest. See Order Granting Petition, filed April 30, 2025 (Doc. 95).  See also Zimmerman Aff. ¶ 34, at 18.

**2.       The Investigation.**

6.       DEA Special Agent Zimmerman, along with other DEA Task Force Officers ("TFO's), Special Agents ("SA's), and Intelligence Research Specialists, and other law enforcement officials ("agents"), investigate Martinez.  See Zimmerman Aff. ¶ 4, at 2-3.

7.       The investigation consists of the following sources of information:

a.       Information provided by including oral and written reports that I have received directly or indirectly from said investigators;

b.    Results of physical surveillance conducted by agents during the investigation;

c.    A review of telephone toll records and subscriber information;

d.    Information derived from consensually recorded conversations;

e.    Information derived from lawfully intercepted telephone conversations and text messages;

f.    A review of driver's license and automobile registration records;

g.    Records from commercial databases; and

h.    Records from the National Crime Information Center ("NCIC").

Zimmerman Aff. ¶ 4, at 2-3.

**3.**    **The Search**.

8.    Martinez' residence ("Martinez Residence 1") is 701 Menaul Blvd. NW, Albuquerque, NM 87107.  See Zimmerman Aff. ¶ 35, at 19; Warrant at 1.

9.    On May 2, 2025, Deputy United States Marshals ("Marshals") observe Martinez leave and return to the Martinez Residence 1 between 8 a.m. and 9 a.m.  See Zimmerman Aff. ¶ 36, at 19.

10.    When Marshals surround the Martinez Residence 1 and order residents to exit, a woman named April Abeyta exits, and the Marshals temporarily detain her.  See Zimmerman Aff. ¶ 38, at 19.

11.    Martinez, "a few moments later," exits Martinez Residence 1, and the Marshals arrest him.  Zimmerman Aff. ¶¶ 39, 42, at 19-20.

12.    Martinez does not have his cellular telephone on him at the time of arrest.  See

Zimmerman Aff. ¶ 46, at 20.

13.     Martinez' cellular telephone number is 505-702-6594, and Gomez gives the Marshals Martinez' telephone number.  See Zimmerman Aff. ¶ 43, at 20.

14.     Martinez' cellular telephone number is connected to the Cash App[3] account with the username "$boisking".  Zimmerman Aff. ¶ 44 at 20.

15.     As for the cellular telephone, Martinez frequently uses mobile phones to traffic narcotics.  See Zimmerman Aff. ¶ 45, at 21.

16.     Agents return to the residence several hours after the arrest to retrieve Martinez' cellular telephone.  See Zimmerman Aff. ¶ 47, at 20.

17.     As agents approach the residence, Abeyta is leaving the residence, and tells them that she has Martinez' cellular telephone.  Zimmerman Aff. ¶ 47, at 20.

18.     Agents call Martinez' number 505-702-6594, and the cellular telephone in Abeyta's possession rings.  See Zimmerman Aff. ¶ 47, at 21.

19.     Abeyta gives verbal and written consent for agents to seize Martinez' cellular telephone.  Zimmerman Aff. ¶ 47, at 21.

20.     As for the Martinez Residence 1, based on Martinez' history and involvement in a drug trafficking organization, "individuals involved in illegal trafficking of controlled substances often conceal evidence of their drug trafficking activities in their residences," and "there is likely evidence related to Martinez' drug trafficking activity inside" the Martinez Residence 1.  Zimmerman Aff. ¶ 48, at 21.

---

[3]Cash App is a financial services software where users can transfer money between each other.  See https://cash.app/ (last accessed July 9, 2025).

## PROCEDURAL BACKGROUND

First, the Court summarizes the Motion.  Then, the Court summarizes the United States'
response.  Martinez does not file a reply.

### 1.    The Suppression Motion.

To summarize Martinez' argument, Martinez argues that the Zimmerman Aff.'s factual
basis is "woefully lacking" and that the United States unreasonably relies on the warrant.
Suppression Motion at 12.  Martinez states that the Zimmerman Aff. does not allege any criminal
activity happens in Martinez' home and does not describe any specific criminally relevant evidence
that is likely in the home.  See Suppression Motion at 9.  Martinez analogizes this case to United
States v. Gonzales, 399 F.3d 1225 (10th Cir. 2005), in which the Tenth Circuit holds that the
supporting affidavit for a warrant to search the defendant's home, 321 E. Church Street, lacks
factual basis to support a nexus between the criminal activity alleged and the location to be
searched.  See 399 F.3d at 1230.  There, the Tenth Circuit explains that the affidavit does not
specify that 321 E. Church Street is the defendant's home and does not explain what the connection
is between 321 E. Church Street, the defendant's vehicle that was searched already, and the
defendant's suspected criminal activity.  See 399 F.3d at 1227-28.  Similarly, here, Martinez
argues, the Zimmerman Aff. lacks a connection between Martinez and criminal conduct, because
the affidavit "does not even contain a description of prior criminal conduct; it describes no criminal
conduct whatsoever."  Motion at 12.

### 2.    The Response.

The United States files a response.  See United States' Notice to Supplement the Record at
1, filed July 20, 2025 (Doc. 408)("Response").  In the Response, the United States asserts that
April Abeyta voluntarily provides Martinez' cellular telephone to law enforcement outside of the
residence and prior to any search.  See Response at 2.  Then, April Abeyta consents to a search of

Martinez' residence.  See Response at 2.  The United States provides: (i) the consent-to-search form that April Abeyta signs; (ii) a DEA agent report memorializing the search and seizure of money; and (iii) the search warrant.  See Response at 2.

## LAW REGARDING FOURTH AMENDMENT SEARCHES

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. It also commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  In determining whether a Fourth Amendment violation has occurred, courts must "assur[e] preservation of that degree of privacy against government that existed when the Fourth Amendment was adopted."  United States v. Jones, 565 U.S. 400, 406 (2012)(Scalia, J.)(quoting Kyllo v. United States, 533 U.S. 27, 31 (2001)(Scalia, J.))(brackets in United States v. Jones, but not in Kyllo v. United States).

"Not all searches require a warrant.  The hallmark of the Fourth Amendment is reasonableness."  United States v. Harmon, 785 F. Supp. 2d 1146, 1157 (D.N.M. 2011)(Browning, J.).  See United States v. McHugh, 639 F.3d 1250, 1260 (10th Cir. 2011)("[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'")(quoting Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006))).  "In the criminal context, reasonableness usually requires a showing of probable cause."  Herrera v. Santa Fe Pub. Sch., 792 F. Supp. 2d 1174, 1184 (D.N.M. 2011)(Browning, J.)(quoting Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cty. v. Earls, 536 U.S. 822, 828 (2002)).  The Supreme Court of the United States holds that, in the law enforcement context, "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions."  Katz v. United States, 389 U.S. 347, 357

(1967)(footnotes omitted).  See United States v. Knapp, 917 F.3d 1161, 1165 (10th Cir. 2019)("The warrantless search rule, however, is subject to several exceptions.").

### 1.  Reasonable Government Searches.

"[B]ecause 'the ultimate touchstone of the Fourth Amendment is reasonableness,'" when a search implicating the Fourth Amendment has occurred, the district court must determine whether the search is reasonable.  Kentucky v. King, 563 U.S. 452, 459 (2011)(quoting Brigham City v. Stuart, 547 U.S. at 403.  See Samson v. California, 547 U.S. 843, 848 (2006)("'[U]nder our general Fourth Amendment approach' we 'examin[e] the totality of the circumstances' to determine whether a search is reasonable within the meaning of the Fourth Amendment." (quoting United States v. Knights, 534 U.S. 112, 118 (2001))).  "Although the Fourth Amendment ordinarily requires the degree of probability embodied in the term 'probable cause,' a lesser degree satisfies the Constitution when the balance of governmental and private interests makes such a standard reasonable."  United States v. Knights, 534 U.S. at 121.  The Supreme Court justifies this balancing test with the recognition that "[t]he Fourth Amendment does not protect all subjective expectations of privacy, but only those that society recognizes as 'legitimate.'"  Vernonia Sch. Dist. 47J v. Acton, 515 U.S. 646, 654 (1995)(quoting New Jersey v. T.L.O., 649 U.S. 325, 338 (1985)).

"Whether a search is reasonable 'is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests.'"  Samson v. California, 547 U.S. at 848 (quoting United States v. Knights, 534 U.S. at 118).  See Banks v. United States, 490 F.3d 1178, 1184 (10th Cir. 2007)(stating that the Supreme Court "described the totality-of-the-circumstances test as one where 'the reasonableness of a search is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy, and on the other, the degree to which it

is needed for the promotion of legitimate governmental interests'" (quoting <u>United States v. Knights</u>, 534 U.S. at 119-20)).

> As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is "reasonableness."  At least in a case . . . where there was no clear practice, either approving or disapproving the type of search at issue, at the time the constitutional provision was enacted, whether a particular search meets the reasonableness standard "'is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests.'"

<u>Vernonia Sch. Dist. 47J v. Acton</u>, 515 U.S. at 652-53 (quoting <u>Skinner v. Ry. Labor Executives' Ass'n</u>, 489 U.S. 602, 617 (1989)).  The Supreme Court has held that the test of reasonableness under the Fourth Amendment is not a concrete test:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case [determining reasonableness] requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

<u>Bell v. Wolfish</u>, 441 U.S. 520, 559 (1979).

In analyzing the first factor -- the intrusion on the individual's privacy -- courts look to the individual's privacy expectations.  <u>See</u>, <u>e.g.</u>, <u>United States v. Knights</u>, 534 U.S. at 119-120 (noting that the petitioner had a "significantly diminished . . . reasonable expectation of privacy," because a condition of his probation was to consent to search of his apartment without notice or probable cause, and because he clearly was notified and informed of the provision); <u>Banks v. United States</u>, 490 F.3d at 1186-87 (noting that the plaintiffs, convicted felons on probation, have a more limited expectation of privacy than the ordinary citizen, and noting that "'[w]hat is "reasonable" under the fourth amendment for a person on conditional release, or a felon, may be unreasonable for the general population'")(quoting <u>Green v. Berge</u>, 354 F.3d 675, 680 (7th Cir. 2004)(Easterbrook, J., concurring))(internal quotations have no citation); <u>Boling v. Romer</u>, 101 F.3d 1336, 1340 (10th

Cir. 1999)("[W]hile obtaining and analyzing the DNA or saliva of an inmate convicted of a sex offense is a search and seizure implicating Fourth Amendment concerns, it is a reasonable search and seizure.  This is so in light of an inmate's diminished privacy rights . . . .").

As the Honorable Elena Kagan, Associate Justice of the Supreme Court, notes, property law informs society's expectations about what government intrusions are reasonable: "It is not surprising that in a case involving a search of a home, property concepts and privacy concepts should so align.  The law of property 'naturally enough influence[s]' our 'shared social expectations' of what places should be free from governmental incursions." Florida v. Jardines, 569 U.S. 1, 13 (2013)("Jardines")(Kagan, J., concurring)(quoting Georgia v. Randolph, 547 U.S. 103, 111 (2006))(alteration in Jardines, but not in Georgia v. Randolph).  Similarly, in Vernonia Sch. Dist. 47J v. Acton, Justice Scalia, writing for the majority, notes: "What expectations are legitimate varies, of course, with context . . . , depending, for example, upon whether the individual asserting the privacy interest is at home, at work, in a car, or in a public park."  515 U.S. at 654 (citing New Jersey v. T.L.O., 469 U.S. 325, 337 (1985)).

**2.     Florida v. Jardines.**

In Florida v. Jardines, Justice Scalia holds that using a drug-sniffing dog to sniff a person's "home and its immediate surroundings" is a Fourth Amendment search.  569 U.S. at 11.  Justices Thomas, Ginsburg, Sotomayor, and Kagan join Justice Scalia's majority opinion in Florida v. Jardines.  Justice Kagan files a separate concurring opinion, in which Justices Ginsburg and Sotomayor join, adding "further thoughts, suggesting that a focus on Jardines' privacy interests would make 'an easy cas[e] easy' twice over," but "join[ing] the Court's opinion in full."  569 U.S. at 16 (Kagan, J., concurring).  Justice Alito dissents, and Chief Justice Roberts, Justice Kennedy, and Justice Breyer join his opinion.

In Florida v. Jardines, the Miami-Dade, Florida, police department and the Drug Enforcement Administration receive a tip that the defendant Jardines is growing marijuana in his home, and then send a surveillance team to Jardines' home.  See 569 U.S. at 3.  Observing nothing of note in the first fifteen minutes watching the home, two detectives approach the home accompanied by a dog trained to detect marijuana, cocaine, heroin, and several other drugs by alerting the detectives with behavioral changes.  See Jardines, 569 U.S. at 3.  As the dog approaches Jardines' front porch, the dog "apparently sensed one of the odors he had been trained to detect," and after tracking back and forth, sat at the base of the front door, "which is the trained behavior upon discovering the odor's strongest point."  569 U.S. at 3.  The dog's handler then immediately leaves the porch, and tells the other agents and officers at the scene that there is a positive alert for drugs, at which time the officers apply for and receive a search warrant for the residence, the execution of which reveals marijuana plants.  See 569 U.S. at 3.  Jardines is arrested for trafficking in marijuana and moves to suppress the evidence based on an illegal search. See 569 U.S. at 3. Justice Scalia holds that the use of a drug-sniffing dog is a Fourth Amendment search, reasoning:

> [T]his case [is] a straightforward one.  The officers were gathering information in an area belonging to Jardines and immediately surrounding his house -- in the curtilage of the house, which we have held enjoys protection as part of the home itself. And they gathered that information by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner.

569 U.S. at 5.  Justice Scalia notes that "[t]he Fourth Amendment 'indicates with some precision the places and things encompassed by its protections': persons, houses, papers, and effects."  569 U.S. at 6 (quoting Oliver v. United States, 466 U.S. at 176).  Thus, the Fourth Amendment does not cover every "investigation[] on private property; for example, an officer may (subject to Katz)

gather information in what we have called 'open fields' -- even if those fields are privately owned

-- because such fields are not enumerated in the Amendment's text." 569 U.S. at 6.

     Justice Scalia holds that "the officers' investigation took place in a constitutionally

protected area," the home, because the front porch is the home's curtilage. Jardines, 569 U.S. at

7. Justice Scalia then "turn[s] to the question of whether it was accomplished through an

unlicensed physical intrusion," 569 U.S. at 5, and reasons:

> While law enforcement officers need not "shield their eyes" when passing by the
> home "on public thoroughfares," [California v. ]Ciraolo, 476 U.S. [207,] 213
> [(1986)], an officer's leave to gather information is sharply circumscribed when he
> steps off those thoroughfares and enters the Fourth Amendment's protected areas.
> In permitting, for example, visual observation of the home from "public navigable
> airspace," we were careful to note that it was done "in a physically nonintrusive
> manner." Id. Entick v. Carrington, 2 Wils. K.B. 275, 95 Eng. Rep. 807 (K.B.
> 1765), a case "undoubtedly familiar" to "every American statesman" at the time of
> the Founding, Boyd v. United States, 116 U.S. 616, 626 . . . (1886)[, abrogated by
> Warden, Md. Penitentiary v. Hayden, 387 U.S. 294 (1967)], states the general rule
> clearly: "[O]ur law holds the property of every man so sacred, that no man can set
> his foot upon his neighbour's close without his leave." 2 Wils. K.B., at 291. As it
> is undisputed that the detectives had all four of their feet and all four of their
> companion's firmly planted on the constitutionally protected extension of Jardines'
> home, the only question is whether he had given his leave (even implicitly) for them
> to do so. He had not.

Jardines, 569 U.S. at 7-8. Justice Scalia notes that, while society recognizes an implicit license

which "typically permits the visitor to approach the home by the front path, knock promptly, wait

briefly to be received, and then (absent invitation to linger longer) leave," he concludes that

"introducing a trained police dog to explore the area around the home in hopes of discovering

incriminating evidence is something else. There is no customary invitation to do that." Jardines,

569 U.S. at 9 (emphasis in original). Justice Scalia explains:

> An invitation to engage in canine forensic investigation assuredly does not inhere
> in the very act of hanging a knocker. To find a visitor knocking on the door is
> routine (even if sometimes unwelcome); to spot that same visitor exploring the front
> path with a metal detector, or marching his bloodhound into the garden before
> saying hello and asking permission, would inspire most of us to -- well, call the
> police. The scope of a license -- express or implied -- is limited not only to a

> particular area but also to a specific purpose. Consent at a traffic stop to an officer's
> checking out an anonymous tip that there is a body in the trunk does not permit the
> officer to rummage through the trunk for narcotics. Here, the background social
> norms that invite a visitor to the front door do not invite him there to conduct a
> search.

Jardines, 569 U.S. at 3.

Justice Scalia further notes that, in United States v. Jones, the Supreme Court concludes that "[t]he

Katz reasonable-expectations test 'has been added to, not substituted for,' the traditional property-

based understanding of the Fourth Amendment, and so it is unnecessary to consider [the test under

Katz v. United States] when the government gains evidence by physically intruding on

constitutionally protected areas."  Jardines, 569 U.S. at 11 (quoting United States v. Jones, 565

U.S. at 409).  Because the Supreme Court concludes that the conduct is a Fourth Amendment

search under the trespass-based analysis, therefore, it holds that it is unnecessary to consider

whether the conduct amounts to a search under the Katz v. United States reasonable-expectation-

of-privacy analysis:

> Thus, we need not decide whether the officers' investigation of Jardines' home
> violated his expectation of privacy under Katz. One virtue of the Fourth
> Amendment's property-rights baseline is that it keeps easy cases easy. That the
> officers learned what they learned only by physically intruding on Jardines'
> property to gather evidence is enough to establish that a search occurred.

Jardines, 569 U.S. at 11.

### 3.    **Vehicle Searches**.

One exception to the Fourth Amendment search-warrant requirement is the automobile

exception, which allows law enforcement to search a vehicle without a warrant if they have

probable cause to believe the vehicle contains evidence of criminal activity.  See Collins v.

Virginia, 584 U.S. 586, 591-92 (2018).  While an automobile stop may be made based on

reasonable suspicion that the driver has committed a crime, see United States v. Toro-Pelaez, 107

F.3d at 823-24, an officer must have probable cause to believe that the vehicle contains contraband

or other evidence of criminality to execute an automobile search, see United States v. Forbes, 528 F.3d 1273, 1277-78 (10th Cir. 2008)("[T]he Fourth Amendment unquestionably prohibits the search of a vehicle's interior unless law enforcement officials receive consent, have a warrant, or otherwise establish probable cause to support the search.").  Under the automobile-exception to the warrant requirement, however, a warrant generally is not required.  See Carroll v. United States, 267 U.S. 132, 153 (1925)(establishing the automobile exception for vehicles, "because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought" unlike "a store, dwelling house, or other structure").  The ongoing exigent circumstance that the vehicle might drive away has led the Supreme Court to conclude that a warrant is not required to search a vehicle.  See Collins v. Virginia, 584 U.S. at 596 (declining to apply the automobile exception to a motorcycle parked in the curtilage of a house, because such a search "would unmoor the exception from its justification" that a vehicle poses a risk of immediate mobility); Maryland v. Dyson, 527 U.S. 465, 467 (1999)("[W]here there [is] probable cause to search a vehicle[,] 'a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not been actually obtained.'")(quoting United States v. Ross, 456 U.S. at 809)(emphasis added in Maryland v. Dyson); California v. Carney, 471 U.S. 386, 393 (1985)(applying the automobile exception to the defendant's mobile home, because it was "readily mobile" and "could readily have been moved beyond the reach of the police").

Thus, if the vehicle is readily mobile, "'probable cause to search a vehicle is established if, under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence.'"  United States v. Phillips, 71 F.4th 817, 823 (10th Cir. 2023)(quoting United States v. Vasquez-Castillo, 258 F.3d 1207, 1212 (10th Cir. 2001)).  The search's object and the places in which there is probable cause to believe that the object may be found define the scope of a

warrantless vehicle search.  See United States v. Ross, 456 U.S. 798, 824 (1982).  Accordingly, if probable cause justifies a vehicle search, it justifies the search of every part of the vehicle in which the evidence might be found, including closed compartments, containers, packages, and trunks, and any contents or containers that may conceal the object of the search.  See California v. Acevedo, 500 U.S. 565, 574 (1991); Wyoming v. Houghton, 526 U.S. 295, 304-07 (1999); United States v. Rosborough, 366 F.3d 1145, 1152-53 (10th Cir. 2004).

### 4.  Searches Incident to Arrest.

"Among the exceptions to the warrant requirement is a search incident to a lawful arrest."  Arizona v. Gant, 556 U.S. 332, 338 (2009)("Gant").  The exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations."  Gant, 556 U.S. at 338.  The search-incident-to-lawful-arrest exception enables the search "of the arrestee's person" in addition to "the area within the arrestee's 'immediate control.'"  United States v. Knapp, 917 F.3d at 1165 (quoting Chimel v. California, 395 U.S. 752, 763 (1969)).  The Supreme Court defines the area within the arrestee's "immediate control" as "the area from within which he might gain possession of a weapon or destructible evidence," Chimel v. California, 395 U.S. at 763, a limitation that "ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy," Gant, 556 U.S. at 339.

The search-incident-to-lawful-arrest exception also may enable a search of an automobile where a recent occupant is placed under arrest.  See New York v. Belton, 453 U.S. 454, 459-60 (1981).  An automobile search incident to a recent occupant's arrest is Constitutional if: (i) "the arrestee is within reaching distance of the vehicle during the search"; or (ii) "if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'"  Davis v. United States, 564 U.S. 229, 235 (2011)(quoting Gant, 556 U.S. at 343).  See United States v.

Knapp, 917 F.3d at 1168 (explaining that automobile searches incident to a lawful arrest under Gant "are justified either by the 'twin rationales of Chimel' or by an arresting officer's reasonable belief that the vehicle contains evidence of the crime precipitating the arrest" (quoting Gant, 556 U.S. at 342-43)).  Although a search incident to arrest must be a "contemporaneous incident of [a lawful] arrest," New York v. Belton, 453 U.S. at 460, it is of no moment that a search precedes an arrest, so long as "probable cause for the arrest precede[s] the search," United States v. Smith, 389 F.3d 944, 952-53 (9th Cir. 2004).

      5.      **Fourth Amendment Standing**.

The Tenth Circuit refers to the test whether a particular search implicates a defendant's Fourth Amendment interests -- whether the search violates the defendant's reasonable privacy expectation -- as one of "standing."  United States v. Creighton, 639 F.3d 1281, 1286 (10th Cir. 2011)("The Defendant has the burden of establishing . . . standing, or, in other words, a subjective expectation of privacy in the [item searched] that society is prepared to recognize as reasonable."); United States v. Poe, 556 F.3d 1113, 1121 (10th Cir. 2009)("[A] defendant raising a Fourth Amendment challenge must first demonstrate that he has standing to object to the search.")(citing United States v. Rubio-Rivera, 917 F.2d 1271, 1274 (10th Cir. 1990)); United States v. Shareef, 100 F.3d 1491, 1499 (10th Cir. 1996)("A Defendant has standing to challenge a search only if he or she has a reasonable expectation of privacy in the area being searched.").  Accordingly, the Court, tracing the Tenth Circuit's language, refers to this test as one of standing. See, e.g., United States v. Harmon, 785 F. Supp. 2d at 1157 ("Standing requires the defendant to show 'that he had a subjective expectation of privacy in the premises searched and that society is prepared to recognize that expectation as reasonable.'")(quoting United States v. Poe, 556 F.3d at 1121).  The Supreme Court's decisions in United States v. Jones and Florida v. Jardines, however, suggest that this test now expressly has been designated a substantive Fourth Amendment analysis alongside

the trespass-based Fourth Amendment analysis rather than a distinct analysis under the rubric entitled standing.

In <u>Rakas v. Illinois</u>, 439 U.S. 128 (1978), the Supreme Court disapproves of labeling the inquiry whether a search implicates a defendant's personal Fourth Amendment interests "as one of standing, rather than simply recognizing it as one involving the substantive question of whether or not the proponent of the motion to suppress had his own Fourth Amendment rights infringed by the search and seizure which he seeks to challenge." 439 U.S. at 133. Dispensing with this label, the Supreme Court notes:

> Had we accepted petitioners' request to allow persons other than those whose own Fourth Amendment rights were violated by a challenged search and seizure to suppress evidence obtained in the course of such police activity, it would be appropriate to retain <u>Jones[ v. United States</u>, 362 U.S. 257 (1960, overruled by <u>United States v. Salvucci</u>, 448 U.S. 83 (1980)]' use of standing in Fourth Amendment analysis. Under petitioners' target theory, a court could determine that a defendant had standing to invoke the exclusionary rule without having to inquire into the substantive question of whether the challenged search or seizure violated the Fourth Amendment rights of that particular defendant. However, having rejected petitioners' target theory and reaffirmed the principle that the "rights assured by the Fourth Amendment are personal rights, [which] . . . may be enforced by exclusion of evidence only at the instance of one whose own protection was infringed by the search and seizure," <u>Simmons v. United States</u>, 390 U.S. at 389 . . . , the question necessarily arises whether it serves any useful analytical purpose to consider this principle a matter of standing, distinct from the merits of a defendant's Fourth Amendment claim. We can think of no decided cases of this Court that would have come out differently had we concluded, as we do now, that the type of standing requirement discussed in Jones and reaffirmed today is more properly subsumed under substantive Fourth Amendment doctrine. Rigorous application of the principle that the rights secured by this Amendment are personal, in place of a notion of "standing," will produce no additional situations in which evidence must be excluded. The inquiry under either approach is the same. But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing. The Court in <u>Jones</u> also may have been aware that there was a certain artificiality in analyzing this question in terms of standing because in at least three separate places in its opinion the Court placed that term within quotation marks. 362 U.S., at 261, 263, 265 . . . .

<u>Rakas v. Illinois</u>, 439 U.S. at 138-39. The Supreme Court emphasized:

> [N]othing we say here casts the least doubt on cases which recognize . . . as a general proposition, the issue of standing [generally.] . . . But this Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many of these traditional standing inquiries, and we think that definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within the purview of substantive Fourth Amendment law than within that of standing.

Rakas v. Illinois, 439 U.S. at 139-40.  In Minnesota v. Carter, the Supreme Court recognizes that

Rakas v. Illinois put an end to the Fourth Amendment standing analysis as separate from the

substantive Fourth Amendment search analysis:

> The Minnesota courts analyzed whether respondents had a legitimate expectation of privacy under the rubric of "standing" doctrine, an analysis that this Court expressly rejected 20 years ago in Rakas . . . . Central to our analysis [in Rakas v. Illinois] was the idea that in determining whether a defendant is able to show the violation of his (and not someone else's) Fourth Amendment rights, the "definition of those rights is more properly placed within the purview of substantive Fourth Amendment law than within that of standing."  Id., at 140 . . . .

Minnesota v. Carter, 525 U.S. at 87-88.  The Supreme Court notes that the analysis under either

approach -- the substantive Fourth Amendment doctrine that the rights that the Amendment secures

are personal versus the separate notion of "standing" -- is the same and that Katz v. United States'

reasonable-expectation-of-privacy analysis now is a substantive Fourth Amendment test, as

opposed to a standing test.  See Rakas v. Illinois, 439 U.S. at 139.

**6.    Probation Searches.**

Although law enforcement officers typically must obtain a search warrant which probable

cause supports before conducting a search, there are exceptions to this requirement where "'special

needs, beyond the normal need for law enforcement, make the warrant and probable-cause

requirement impracticable.'"    United States v. Carter, 511 F.3d 1264, 1267 (10th Cir.

2008)(quoting Griffin v. Wisconsin. 483 U.S. 868, 873 (1987)).  The Supreme Court concludes

that, in the State probation context, special needs negate the requirement that an officer obtain a

warrant supported by probable cause.  See United States v. Carter, 511 F.3d at 1268 (citing Griffin

v. Wisconsin, 483 U.S. at 875).  See, e.g., United States v. Romo, No. CR 14-2352, 2015 WL 13651108, at *4 (D.N.M. December 2, 2015)(Armijo, C.J.)(unpublished)(stating that New Mexico's State probation system presents a "special need" under Griffin v. Wisconsin).  For a probation search to meet the Fourth Amendment's requirements, it must be "'carried . . . out pursuant to state law which itself satisfies the Fourth Amendment's reasonableness requirement.'" United States v. Carter, 511 F.3d at 1268 (quoting United States v. Lewis, 71 F.3d 358, 361 (10th Cir. 1995)).

In United States v. Knights, 534 U.S. 112 (2001), the Supreme Court concludes that a probationer who signs a probation agreement that "clearly expressed the search condition" has a "significantly diminished . . . reasonable expectation of privacy."  534 U.S. at 119-20.  See United States v. Blake, 284 F. App'x 530, 535-536 (10th Cir. 2008)("The Supreme Court has concluded that 'probationers and parolees do not enjoy the full suite of rights provided by the Fourth Amendment.'" (citing United States v. Trujillo, 404 F.3d 128, 1241-42 (10th Cir. 2005)(discussing Griffin v. Wisconsin, 483 U.S. 868 (1987), and United States v. Knights, 534 U.S. 112 (2001))). In so concluding, the Supreme Court states that, "[j]ust as other punishments for criminal convictions curtail an offender's freedoms, a court granting probation may impose reasonable conditions that deprive the offender of some freedoms enjoyed by law-abiding citizens."  United States v. Knights, 534 U.S. at 119.  The Tenth Circuit "has interpreted *Knights* to mean that 'a probation search [is] permissible so long as supported by reasonable suspicion, regardless of the motivation for the search.'"  United States v. Freeman, 479 F.3d 743, 747 (10th Cir. 2007)(quoting United States v. Tucker, 305 F.3d 1193, 1200 (10th Cir. 2002)(alteration in United States v. Freeman, but not United States v. Tucker)).

Reasonable suspicion is "['']merely a particularized and objective basis for suspecting criminal activity.'"  United States v. Freeman, 479 F.3d at 748 (quoting United States v. Tucker, 305 F.3d at 1200).  While reasonable suspicion requires "'some minimal level of objective justification,'" it requires less justification than is required to show probable cause.  United States v. Freeman, 479 F.3d at 749-50 (quoting INS v. Delgado, 466 U.S. 210, 217 (1984), and citing United States v. Sokolow, 490 U.S. 1, 7 (1989)). In assessing whether reasonable suspicion exists for a search, courts "consider the quantity and reliability of the information possessed by law enforcement and consider this information in light of the totality of the circumstances."  United States v. Freeman, 479 F.3d at 749 (citing United States v. Sokolow, 490 U.S. at 8).

In a number of instances and in a variety of contexts, the Tenth Circuit has upheld probation searches when the officer conducting the search has reasonable suspicion to conduct the search pursuant to a probation agreement's terms.  In United States v. Blake, the Tenth Circuit refuses to suppress evidence found during a search pursuant to the defendant's wife's probation agreement of a residence that the defendant shared with his wife.  See 284 F. App'x at 535-37.  In United States v. Stewart, 273 F. App'x 768 (10th Cir. 2008), the Tenth Circuit declines to suppress evidence found during the search of a defendant's residence, pursuant to the defendant's probation agreement, that police and probation agents conduct while attempting to execute an arrest warrant. See 273 F. App'x at 769-71.  In United States v. Carter, the Tenth Circuit declined to suppress evidence found during the search of a defendant's residence on the basis of a tip which a social worker relayed to the defendant's probation officer that the defendant was in breach of his probation agreement, and also declined to suppress evidence found during a subsequent consensual search.  See 511 F.3d 1266-69.

7.    __Probable Cause for Search Warrants__.

"The Supreme Court requires that a magistrate judge be provided information sufficient to determine the existence of probable cause before he or she issues a warrant."  United States v. Romero, 743 F. Supp. 2d 1281, 1302 (D.N.M. 2010)(Browning, J.)(citing Illinois v. Gates, 462 U.S. 213, 239 (1983)), aff'd, 749 F.3d 900 (10th Cir. 2014).  Probable cause requires "more than mere suspicion but less evidence than is necessary to convict."  United States v. Burns, 624 F.2d 95, 99 (10th Cir. 1980).  To establish probable cause to justify a search of a home, an affidavit in support of a search warrant "must contain facts sufficient to lead a prudent person to believe that a search would uncover contraband or evidence of criminal activity."  United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000).  "Probable cause undoubtedly requires a nexus between suspected criminal activity and the place to be searched."  United States v. Corral-Corral, 899 F.2d 927, 937 (10th Cir. 1990).

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Illinois v. Gates, 462 U.S. at 238 (internal quotations have no citation).  See United States v. Glover, 104 F.3d 1570, 1578 (10th Cir. 1997)(concluding that, in determining whether an affidavit supports a finding of probable cause, the court must review the affidavit as a whole and look to the totality of the information contained therein), abrogated on other grounds by Corley v. United States, 556 U.S. 303 (2009).  In making his or her determination, the magistrate judge "may draw reasonable inferences from the material provided in the warrant application."  United States v. Rowland, 145 F.3d 1194, 1205 (10th Cir. 1998).

"A reviewing court should accord great deference to a magistrate's determination of probable cause . . . ."  United States v. Reed, 195 F. App'x at 822.  The Court's duty is "simply to

ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed." Illinois v. Gates, 462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. at 271)(ellipses and brackets in Illinois v. Gates, but not in Jones v. United States). This deference is appropriate to further the Fourth Amendment's strong preference for warrants. See Massachusetts v. Upton, 466 U.S. 727, 733 (1984); Aguilar v. Texas, 378 U.S. 108, 110-11 (1964)("An evaluation of the constitutionality of a search warrant should begin with the rule 'that the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . .'" (quoting United States v. Lefkowitz, 285 U.S. 452, 464 (1932)), abrogated on other grounds by Illinois v. Gates, 462 U.S. 213. Because of the strong preference for warrants, "in a doubtful or marginal case a search under a warrant may be sustainable where without one it would fall." United States v. Ventresca, 380 U.S. 102, 106 (1965).

"The deference accorded a magistrate judge's probable cause determination, however, is not boundless." United States v. Alabi, 943 F. Supp. 2d 1201, 1253-54 (D.N.M. 2013)(Browning, J.), aff'd, 597 F. App'x 991 (10th Cir. 2015)(unpublished). "The court should not defer to a magistrate judge's probable-cause determination where there is no substantial basis for concluding that the affidavit in support of the warrant established probable cause." United States v. Sedillo, 297 F. Supp. 3d 1155, 1180 (D.N.M. 2017)(Browning, J.)(citing United States v. Danhauer, 229 F.3d at 1006). Specifically, the Court should not defer to a magistrate judge's "probable cause determination if it is a mere ratification of the bare conclusions or 'hunches' of others or where it involves an improper analysis of the totality of the circumstances." United States v. Reed, 195 F. App'x at 822 (citing United States v. Leon, 468 U.S. at 915; Massachusetts v. Upton, 466 U.S. at 734; Illinois v. Gates, 462 U.S. at 239).

8.    **Specificity Required in Warrants**.

In several opinions, the Tenth Circuit has clearly established that items to be seized must be described within the search warrant for seizure of those items to be reasonable.  The Fourth Amendment requires search warrants to particularly describe the place to be searched, and the persons or things to be seized.  See United States v. Angelos, 433 F.3d 738, 744 (10th Cir. 2006).  Furthermore, the Tenth Circuit has held that "[t]he Fourth Amendment requires that a search warrant describe the things to be seized with sufficient particularity to prevent a general exploratory rummaging in a person's belongings." United States v. Campos, 221 F.3d 1143, 1147 (10th Cir. 2000)(quoting United States v. Carey, 172 F.3d 1268, 1271 (10th Cir. 1999).  "A warrant's description of things to be seized is sufficiently particular if it allows the searcher to reasonably ascertain and identify the things authorized to be seized." United States v. Hargus, 128 F.3d 1358, 1362 (10th Cir. 1997).  "The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another.  As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."  Davis v. Gracey, 111 F.3d 1472, 1478 (10th Cir. 1997)(quoting Marron v. United States, 175 U.S. 192, 196 (1927)).  "The test applied to the description of the items to be seized is a practical one . . . and the language in warrants is to be read in a common sense fashion . . . As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." Davis v. Gracey, 111 F.3d at 1478.  See Copar Pumice Co. v. Morris, No. CIV 07-79 JB/ACT, 2008 WL 2323488, at *11-12 (D.N.M. Mar. 21, 2008)(Browning, J.)

### LAW REGARDING FOURTH AMENDMENT SEIZURES

The Fourth Amendment protects individuals from unreasonable seizures.  See U.S. Const. amend. IV.  "A person is seized by the police and thus entitled to challenge the government's action

under the Fourth Amendment when the officer, 'by means of physical force or show of authority,' terminates or restrains his freedom of movement." Brendlin v. California, 551 U.S. 249, 254 (2007)(quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)). See United States v. Roberson, 864 F.3d 1118, 1121 (10th Cir. 2017). "[W]hen an officer does not apply physical force to restrain a subject, a Fourth Amendment seizure occurs only if (a) the officer shows his authority; and (b) the citizen 'submits to the assertion of authority.'" United States v. Salazar, 609 F.3d at 1064 (quoting California v. Hodari D., 499 U.S. 621, 626 (1991)). "'[T]he test for existence of a show of authority is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.'" United States v. Salazar, 609 F.3d at 1064 (quoting California v. Hodari D., 499 U.S. at 628). "'If a reasonable person would feel free to terminate the encounter, then he or she has not been seized.'" United States v. Ojeda-Ramos, 455 F.3d 1178, 1183 (10th Cir. 2006)(quoting United States v. Drayton, 536 U.S. 194, 201 (2002)). See California v. Hodari D., 499 U.S. at 627-28 ("[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980))). The standard for submission is also objective, see United States v. Salazar, 609 F.3d at 1064 (citing United States v. Cardoza, 129 F.3d 6, 14 n.4 (1st Cir. 1997)), but "[s]ubmission 'requires, at minimum, that a suspect manifest compliance with police orders,'" United States v. Roberson, 864 F.3d at 1122 (quoting United States v. Mosley, 743 F.3d 1317, 1326 (10th Cir. 2014)). For purposes of analyzing Fourth Amendment seizures, the Tenth Circuit has divided interactions between police and citizens into three categories: (i) consensual encounters; (ii) investigative stops; and (iii) arrests. See United States v. Samilton, 56 F.4th 820 (10th Cir. 2022); Oliver v. Woods, 209

F.3d 1179, 1186 (10th Cir. 2000).

### 1.    Consensual Encounters.

A consensual encounter occurs when a police officer approaches a person to ask questions under circumstances where a reasonable person would feel free to refuse to answer and to end the encounter.  See Oliver v. Woods, 209 F.3d at 1186.  For example, officers generally may "go to a person's home to interview him."  United States v. Daoust, 916 F.2d 757, 758 (1st Cir. 1990).  "It is not improper for a police officer to call at a particular house and seek admission for the purpose of investigating a complaint or conducting other official business."  1 Wayne LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 2.3(b), at 769 (6th ed. 2020)("LaFave").

### 2.    Investigative Stops.

In United States v. King, 990 F.2d 1552 (10th Cir. 1993), the Tenth Circuit notes: "Terry was the first case to recognize that 'the Fourth Amendment governs "seizures" of the person . . . [other than] arrests' and created a 'narrowly drawn' exception to the probable cause requirement for lesser government intrusions into an individual's liberty."  United States v. King, 990 F.2d at 1557 (first quoting Terry v. Ohio, 392 U.S. 1, 16 (1968), and then quoting Terry v. Ohio, 392 U.S. at 27).  The Tenth Circuit recognizes that, in Terry v. Ohio, the Supreme Court identifies two police actions: (i) an investigative detention -- a "stop"; and (ii) a protective search -- a "frisk."  United States v. King, 990 F.2d at 1557 (citing United States v. Sokolow, 490 U.S. 1, 7 (1989); Adams v. Williams, 407 U.S. 143, 147-48 (1972)).  The Tenth Circuit explains:

Terry has come to stand for two distinct propositions -- an investigative detention ("stop") in which a police officer, for the purpose of investigation, may briefly detain a person on less than probable cause, . . . and a protective search ("frisk") which permits an officer, in the course of an investigative detention, to conduct a

limited search for weapons for his or her own protection.

United States v. King, 990 F.2d at 1557.  When evaluating either of these actions, a court asks

whether the action was reasonable under the Fourth Amendment.  See United States v. Wilson, 96

F. App'x 640, 643 (10th Cir. 2004); United States v. King, 990 F.2d at 1557.

### 3. **Investigative Detentions and Reasonable Suspicion.**

A police-citizen encounter that is not consensual may be a Constitutional investigative

detention.  See Dorato v. Smith, 108 F. Supp. 3d at 1118.  An investigative detention occurs when

an officer stops and briefly detains a person "'in order to determine his identity or to maintain the

status quo momentarily while obtaining more information.'"  Oliver v. Woods, 209 F.3d at 1186

(quoting Adams v. Williams, 407 U.S. at 146).  Such brief investigative detentions must meet two

distinct requirements to be "reasonable" under the Fourth Amendment.  Dorato v. Smith, 108

F. Supp. 3d at 1118.  First, the officer "'must have a particularized and objective basis for

suspecting the particular person stopped of criminal activity.'"  Oliver v. Woods, 209 F.3d at 1186

(quoting United States v. Cortez, 449 U.S. 411, 417-18 (1981)).  Second, the investigative

detention that follows the stop must be "reasonably related in scope to the circumstances" which

justifies the stop in the first place, Terry v. Ohio, 392 U.S. at 20, because the Fourth Amendment

imposes "limitations on both the length of the detention and the manner in which it is carried out,"

United States v. Holt, 264 F.3d 1215, 1229 (10th Cir. 2001).

"For reasonable suspicion to exist, an officer 'need not rule out the possibility of innocent conduct';

he or she simply must possess 'some minimal level of objective justification' for making the stop."

United States v. Winder, 557 F.3d 1129, 1134 (10th Cir. 2009)(quoting United States v. Vercher,

358 F.3d 1257, 1261 (10th Cir. 2004)).  Information "falling 'considerably short' of a

preponderance standard" will meet the standard for reasonable suspicion.  United States v. Winder,

557 F.3d at 1134 (quoting United States v. Arvizu, 534 U.S. 266, 274 (2002)).  See Illinois v.

Wardlow, 528 U.S. 119, 123 (2000)("'[R]easonable suspicion' is a less demanding standard than

probable cause and requires a showing considerably less than preponderance of the evidence.").

    **4.**    **Frisks.**

A "frisk" is "a protective search . . . which permits an officer, in the course of an

investigative detention, to conduct a limited search for weapons for his or her own protection."

United States v. King, 990 F.2d at 1557 (citing Adams v. Williams, 407 U.S. at 147-48)).  An officer

may "stop and frisk" an individual under the Fourth Amendment if a reasonably prudent person

"in the circumstances would be warranted in the belief that his safety or that of others was in

danger."  Terry v. Ohio, 392 U.S. at 27.  "The officer need not be absolutely certain that the

individual is armed; the issue is whether a reasonably prudent man in the circumstances would be

warranted in the belief that his safety or that of others was in danger."  Terry v. Ohio, 392 U.S. at

27.  A frisk "must  . . .  be confined in scope to an intrusion reasonably designed to discover guns,

knives, clubs, or other hidden instruments for the assault of the police officer."  Terry v. Ohio, 392

U.S. at 29.  In evaluating the validity of the stop-and-frisk, a court should consider the totality of

the circumstances.  See Florida v. Bostick, 501 U.S. 429, 436 (1991).

    **5.**    **Traffic Stops.**

"'A traffic stop is a seizure within the meaning of the Fourth Amendment  . . . .'"  United

States v. Holt, 264 F.3d at 1220 (quoting United States v. Hunnicutt, 135 F.3d 1345, 1348 (10th

Cir. 1998)).  "'For the duration of a traffic stop,  . . .  a police officer effectively seizes everyone

in the vehicle, the driver and all passengers.'"  United States v. White, 584 F.3d 935, 945 (10th

Cir. 2009)(quoting Arizona v. Johnson, 555 U.S. 323, 327 (2009)).  "This seizure implicates a

passenger's Fourth Amendment interests to the same degree as the driver's."  United States v.

Wilson, 96 F. App'x at 643 (citing United States v. Erwin, 875 F.2d 268, 270 (10th Cir. 1989)).

"Therefore, both the driver and passenger have standing to challenge the constitutionality of the

initial stop." United States v. White, 584 F.3d at 945.  See United States v. Wilson, 96 F. App'x at 643 ("Wilson does not assert any such interest in the truck or its contents[;] [n]evertheless, Wilson may, as he does here, 'contest the lawfulness of his own detention and seek to suppress evidence found in the vehicle as the fruit of the illegal detention.'" (quoting United States v. Nava-Ramirez, 210 F.3d at 1131, and citing United States v. Gama-Bastidas, 142 F.3d 1233, 1239 (10th Cir. 1998); United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996))).  The Tenth Circuit "reject[s] any notion that a vehicular stop detains for Fourth Amendment purposes only the driver simply because the passenger may be free to depart."  United States v. Erwin, 875 F.2d at 270.

The Terry v. Ohio framework applies whether the traffic stop is based on probable cause or reasonable suspicion.  See United States v. Holt, 264 F.3d at 1230.  "[B]ecause 'the ultimate touchstone of the Fourth Amendment is reasonableness,'" Kentucky v. King, 563 U.S. at 459 (quoting Brigham City v. Stuart, 547 U.S. at 403), courts

> assess the reasonableness of a routine traffic stop under the principles laid out for investigative detentions in Terry v. Ohio, 392 U.S. 1 (1968), considering "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place."

United States v. Wilson, 96 F. App'x at 643 (quoting United States v. Holt, 264 F.3d at 1220).  A court must examine "both the length of the detention and the manner in which it is carried out," United States v. Holt, 264 F.3d at 1230, "keeping in mind that an officer may extend the duration and scope of the initial detention based on 'an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring,'" United States v. Wilson, 96 F. App'x at 643 (quoting United States v. Caro, 248 F.3d 1240, 1244 (10th Cir. 2001)).  "When the stop is extended based on reasonable suspicion, the further detention must, like the original traffic stop, 'be temporary, lasting no longer than necessary to effectuate the purpose of the [further] detention, and the scope of the [further] detention must be carefully tailored to its underlying justification.'"  United States

v. Wilson, 96 F. App'x at 644 (quoting United States v. Wood, 106 F.3d 942, 945 (10th Cir. 1997))(brackets in United States v. Wilson, but not in United States v. Wood). "A traffic stop is justified at its inception if an officer has . . . reasonable articulable suspicion that a particular motorist has violated any of the traffic . . . regulations of the jurisdiction." United States v. Winder, 557 F.3d at 1134. See United States v. Martinez, No. CR 24-0707 JB, 2024 U.S. Dist. LEXIS 214431, at *94 (D.N.M. November 25, 2024)(Browning, J.)(concluding that the police officer initiates Constitutionally the traffic stop of a car, because there is probable cause to believe that at least some of the car's passengers do not have their seatbelts fastened).

6.    **Arrests.**

An arrest is a seizure that is "characterized by highly intrusive or lengthy search or detention," Oliver v. Woods, 209 F.3d at 1186, that is "reasonable only if supported by probable cause," United States v. Hammond, 890 F.3d 901, 904 (10th Cir. 2018). A police-citizen encounter that goes beyond the limits of a stop under Terry v. Ohio is an arrest. See United States v. Perdue, 8 F.3d 1455, 1462 (10th Cir. 1993)("An encounter between police and an individual which goes beyond the limits of a Terry stop, however, may be constitutionally justified only by probable cause or consent."). The general rule is that "the use of firearms, handcuffs, and other forceful techniques" is sufficiently intrusive to signal that a person has been placed under arrest.[4] United States v. Melendez-Garcia, 28 F.3d 1046, 1052-53 (10th Cir. 1994). See Florida v. Royer, 460 U.S.

---

[4]The use of handcuffs, however, does not always elevate a detention into an arrest. See United States v. Albert, 579 F.3d 1188, 1195 (10th Cir. 2009)("[W]e have approved the use of handcuffs in the context of a Terry stop."); Pierre-Louis v. Schake, No. CIV 12-0527, 2014 WL 1954783, at *44-49 (D.N.M. April 30, 2014)(Browning, J.)(concluding that the defendant police officer acted reasonably in handcuffing the plaintiff, whom he suspected had recently assaulted a person on the side of the road by threatening him with a gun); United States v. Reyes-Vencomo, 866 F. Supp. 2d 1304, 1330 (D.N.M. 2012)(Browning J.)("The use of handcuffs . . . does not always elevate a detention into an arrest.").

491, 499 (1983).

"Inasmuch as an arrest exceeds an investigative stop's limited scope or duration, it must be supported by probable cause."  United States v. Rodriguez, 836 F. Supp. 2d 1258, 1288 (D.N.M. 2011)(Browning, J.).    See  Wilson v. Jara,  866  F. Supp. 2d  1270,  1292  (D.N.M. 2011)(Browning, J.)("Probable cause must support an arrest, 'characterized by highly intrusive or lengthy search or detention.'" (quoting Oliver v. Woods, 209 F.3d at 1185)), aff'd, 512 F. App'x 841 (10th Cir. 2013)(unpublished).  "Probable cause to arrest exists only when the 'facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.'"  United States v. Valenzuela, 365 F.3d 892, 896-97 (10th Cir. 2004)(quoting United States v. Edwards, 242 F.3d 928, 934 (10th Cir. 2001)).  Although "[p]robable cause does not require facts sufficient for a finding of guilt . . . , it does require 'more than mere suspicion.'"  United States v. Morris, 247 F.3d 1080, 1088 (10th Cir. 2001)(quoting United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998)).  The Supreme Court has made the following distinction between reasonable suspicion, which is sufficient for an investigatory stop under Terry v. Ohio, and probable cause, which is required before an arrest can be made:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

Alabama v. White, 496 U.S. 325, 330 (1990).

Probable cause is measured against an objective standard.  See Beck v. Ohio, 379 U.S. 89, 96 (1964).  "The subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive."  United States v. Valenzuela, 365 F.3d at 896-97 (citing

Florida v. Royer, 460 U.S. at 507, and United States. v. Treto-Haro, 287 F.3d 1000, 1006 (10th Cir. 2002)). Thus, the primary consideration is "whether a reasonable officer would have believed that probable cause existed to arrest the defendant based on the 'information possessed by the [arresting] offic[er].'" Olsen v. Layton Hills Mall, 312 F.3d 1304, 1312 (10th Cir. 2002) (quoting Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995))(alterations in Olsen v. Layton Hills Mall, but not in Romero v. Fay).

### 7.    **When a Detention Becomes an Arrest**.

The Tenth Circuit holds that a police-citizen encounter which goes beyond an investigative stop's limits is an arrest that probable cause or consent must support to be valid. See United States v. Perdue, 8 F.3d at 1462 ("An encounter between police and an individual which goes beyond the limits of a Terry stop, however, may be constitutionally justified only by probable cause or consent."). "Terry stops must be limited in scope to the justification for the stop . . . [and] the intrusiveness of a search or seizure will be upheld if it was reasonable under the totality of the circumstances." United States v. Perdue, 8 F.3d at 1462. "The government has the burden of demonstrating 'that the seizure it seeks to justify on the basis of a reasonable suspicion was sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure.'" United States v. Perdue, 8 F.3d at 1462 (quoting Florida v. Royer, 460 U.S. at 500).

The Court also engages in the balancing act of deciding when a detention becomes an arrest. In United States v. Perea, 374 F. Supp. 2d 961 (D.N.M. 2005)(Browning, J.), aff'd sub nom. United States v. Burciaga-Burciaga, 147 F. App'x 725 (10th Cir. 2005)(unpublished), the Court determines whether the police transformed the investigative detention into an arrest by drawing their weapons on the suspect, handcuffing him, and placing him in the back of a police car. See United States v. Perea, 374 F. Supp. 2d at 976. In that case, the Court determines that such measures are appropriate and do not elevate the investigative detention to the level of an

arrest.  See 374 F. Supp. 2d at 976.  The Court recognizes that, "[i]n 'most scenarios,' when officers effectuate what would otherwise be considered a Terry stop by pointing guns at a suspect, that stop is elevated to an arrest, which requires probable cause."  374 F. Supp. 2d at 974 (quoting United States v. Perdue, 8 F.3d at 1463).  See United States v. Gama-Bastidas, 142 F.3d at 1240 ("[T]he use of firearms, handcuffs, and other forceful techniques are justified only by probable cause or when 'the circumstances reasonably warrant such measures.'")(quoting United States v. Perdue, 8 F.3d at 1462); United States v. Burciaga-Burciaga, 147 F. App'x at 730 (affirming the Court's determination in United States v. Perea that the officers have reasonable suspicion to believe that the suspect might be armed and dangerous, justifying the officers' use of firearms and not transforming the vehicle stop into a formal arrest requiring probable cause).

There "exist[s], however, a limited set of circumstances in which officers may draw their guns at a suspect without transforming the stop into an arrest.  'The use of guns in connection with a stop is permissible where the police reasonably believe the weapons are necessary for their protection.'" United States v. Perea, 374 F. Supp. 2d at 974 (quoting United States v. Perdue, at 1462).  See United States v. Merkley, 988 F.2d 1062, 1064 (10th Cir. 1993)(upholding reasonableness of a stop when officers detain the defendant at gunpoint and place him in handcuffs, where suspect threatens to kill someone and is pounding interior of truck with his fists); United States v. Lechuga, 925 F.2d 1035, 1040 (7th Cir. 1991)(holding that the officer's "drawing his gun but keeping it pointed to the street" is not "unreasonably intrusive"); United States v. Alexander, 907 F.2d 269, 272-73 (2d Cir. 1990)(holding that the law enforcement officers do not convert the stop into an arrest by "unholstering their guns and frisking" the defendant when they suspect that the defendant has "just completed a narcotics purchase," there are a number of "innocent bystanders on the crowded city street," and stopping a vehicle "is especially hazardous and supports the need for added

safeguards").  Similarly, there are circumstances in which a seizure is not an arrest merely because

the subject of the detention is placed in handcuffs.  See United States v. Merkley, 988 F.2d at 1064;

United States v. Miller, 974 F.2d 953, 957 (8th Cir. 1992)("Numerous cases have held that a police

officer's use of handcuffs can be a reasonable precaution during a Terry stop."); United States v.

Hastamorir, 881 F.2d 1551, 1557 (11th Cir. 1989)("The handcuffing of Hastamorir constituted a

Terry stop, and was a reasonable action designed to provide for the safety of the agents.").  United

States v. Perea is one of those unique cases, because the police have reasonable cause to believe

that the person whom they are detaining is the suspect whom they seek to arrest -- a man wanted

for murder who, it is believed, might be armed and dangerous.  See 374 F. Supp. 2d at 976.  The

Tenth Circuit affirms the Court's determination that the stop is not an arrest:

> The officers' conduct during the felony stop was appropriate in relation to the
> perceived threat.  The measures taken during a Terry stop must be "reasonably
> related in scope to the circumstances which justified the interference in the first
> place" and may not go beyond what is necessary for officer safety.  United States
> v. King, 990 F.2d 1552, 1563 (10th Cir. 1993)(quoting Terry v. Ohio, 392 U.S. 1,
> 20 . . . (1968)).  The felony stop was justified by suspicion that someone in the
> Escalade might have a gun, or at least was dangerous.  The officers displayed their
> weapons only as long as necessary to ensure that the vehicle and its occupants posed
> no threat.   The officers put their guns away as soon as they handcuffed
> Mr. Burciaga, placed him in the back of a police car, and confirmed that no one else
> was in the car.

United States v. Burciaga-Burciaga, 147 F. App'x at 730.

### 8.    Officers Have a Duty to Investigate Easily Accessible Evidence Before Making an Arrest.

"[T]he Fourth Amendment requires officers to reasonably interview witnesses readily

available at the scene, investigate basic evidence, or otherwise inquire if a crime has been

committed at all before invoking the power of warrantless arrest and detention."  Romero v. Fay,

45 F.3d at 1476-77.  Police officers "may not ignore easily accessible evidence and thereby

delegate their duty to investigate [to others]."  Baptiste v. J.C. Penney Co., 147 F.3d 1252, 1259

(10th Cir. 1998). However, "[o]nce probable cause is established, an officer is not required to continue to investigate for exculpatory evidence before arresting a suspect." Garcia v. Casuas, No. CIV 11-0011, 2011 WL 7444745, at *49 (D.N.M. December 8, 2011)(Browning, J.)(citing Cortez v. McCauley, 478 F.3d 1108, 1121 n.18 (10th Cir. 2007)).

## LAW REGARDING THE EXCLUSIONARY RULE

"When the government obtains evidence though an unconstitutional search, the evidence is inadmissible under the exclusionary rule unless an exception applies." United States v. Neugin, 958 F.3d 924, 931 (10th Cir. 2020). See Sanchez-Llamas v. Oregon, 548 U.S. 331, 332-33 (2006)("[T]he exclusionary rule has been used primarily to deter certain Fourth and Fifth Amendment violations, including, e.g., unconstitutional searches and seizures, and confessions exacted in violation of the right against compelled self-incrimination or due process."); United States v. Calandra, 414 U.S. 338, 347 (1974)("Under this rule, evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure."). "In addition, a defendant also may suppress any other evidence deemed to be 'fruit of the poisonous tree,' (i.e., evidence discovered as a direct result of the unlawful activity), by showing the requisite factual nexus between the illegality and the challenged evidence." United States v. Olivares-Rangel, 458 F.3d 1104, 1108-09 (10th Cir. 2006). The exclusionary rule applies if the defendant can show, by a preponderance of the evidence, a constitutional violation under the Fourth Amendment, and a causal nexus between the violation and the evidence he or she seeks to excluded. See United States v. Torres-Castro, 470 F.3d 992, 999 (10th Cir. 2006). Once the defendant makes this showing, the burden shifts to the United States to prove that an exception to the exclusionary rule applies. See United States v. Torres-Castro, 470 F.3d at 999; United States v. Ringleb, No. CR 22-0190 JB, 2025 2025 U.S. Dist. LEXIS 75030, at *1-3 (D.N.M. April 18,

2025)(Browning, J.)(holding that police officers violate the Fourth Amendment when they enter a backyard unlawfully, there is sufficient factual nexus between the unlawful search and the challenged evidence, and no exclusionary rule exception applies).   The Supreme Court has recognized several exceptions to the exclusionary rule.  See United States v. Alabi, 943 F. Supp. 2d 1201, 1255 (D.N.M. 2013)(Browning, J.), aff'd, 597 F. App'x 991 (10th Cir. 2015).

### 1.      Attenuation Doctrine.

One exception to the exclusionary rule is the attenuation doctrine: "Evidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that 'the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained.'"  Utah v. Strieff, 579 U.S. at 238 (2016)(quoting Hudson v. Michigan, 547 U.S. 586, 593 (2006)).   "The attenuation doctrine evaluates the causal link between the government's unlawful act and the discovery of evidence."  Utah v. Strieff, 579 U.S. at 238.  To determine whether there are sufficient intervening acts to break the causal chain between the unlawful stop and the discovery of evidence, courts examine the three factors that the Supreme Court articulates in Brown v. Illinois, 422 U.S. 590 (1975).

First, the Court looks to the "temporal proximity" between the unconstitutional conduct and the discovery of evidence to determine how closely the discovery of evidence followed the unconstitutional search.  Brown v. Illinois, 422 U.S. at 603.  This factor often favors suppressing the evidence unless "substantial time" elapses between an unlawful act and the time the evidence is obtained.  Kaupp v. Texas, 538 U.S. 626, 633 (2003)(per curiam).  The Supreme Court concludes that a time span of "less than two hours" between the unconstitutional arrest and the confession is too short an interval, and, therefore, counsels in favor of suppressing the evidence.  Brown v. Illinois, 422 U.S. at 604.

Second, the Court considers "the presence of intervening circumstances." Brown v. Illinois, 422 U.S. at 603-04. The Supreme Court concludes that there are sufficient intervening circumstances to admit the evidence in Segura v. United States, 468 U.S. 796 (1984), where it applies the independent source doctrine. See 468 U.S. at 799-801, 814. There, agents have probable cause to believe that apartment occupants are dealing cocaine. See 468 U.S. at 799-800. They seek a warrant. See 468 U.S. at 799-800. In the meantime, they enter the apartment, arrest the occupant, and discover evidence of drug activity during their security sweep. See 468 U.S. at 800-01. The next evening, they obtain a search warrant. See 468 U.S. at 800-01. The Supreme Court deems the evidence admissible, notwithstanding the illegal search, because the information supporting the warrant is "wholly unconnected with the entry and was known to the agents well before the initial entry." 468 U.S. at 814. The Supreme Court suggests that "the existence of a valid warrant favors finding that the connection between unlawful conduct and the discovery of evidence is 'sufficiently attenuated to dissipate the taint.'" Utah v. Strieff, 579 U.S. at 240 (quoting Segura v. United States, 468 U.S. at 815).

Third, and "particularly" significant under the Supreme Court's analysis, the Supreme Court examines "the purpose and flagrancy of the official misconduct." Brown v. Illinois, 422 U.S. at 604. See Utah v. Strieff, 579 U.S. at 239 (observing that the third factor is particularly significant). The exclusionary rule exists to deter police misconduct. See Davis v. United States, 564 U.S. 229, 236-37 (2011). The third factor reflects this rationale by favoring exclusion "only when the police misconduct is most in need of deterrence -- that is, when it is purposeful or flagrant." Utah v. Strieff, 579 U.S. at 241. Mere negligence in violating the Fourth Amendment "hardly rise[s] to a purposeful or flagrant violation." Utah v. Strieff, 579 U.S. at 241. See United States v. Ramos, 194 F. Supp. 3d 1134, 1185-87 (D.N.M. 2016)(Browning, J.).

2.    __Good-Faith Exception__.

Recognizing that the exclusionary rule's "sole purpose . . . is to deter future Fourth Amendment violations," the Supreme Court holds that evidence is admissible where the officer who obtains the evidence through an unlawful search or seizure acts in good faith.  United States v. Davis, 564 U.S. 229, 236-37 (2011).  To determine whether the good-faith exception applies, courts must balance the deterrent effect of excluding the evidence against "the 'substantial social costs' generated by the rule."  United States v. Davis, 564 U.S. at 237 (quoting United States v. Leon, 468 U.S. 897, 907 (1984)).  The Supreme Court explains "that the deterrence benefits of exclusion 'var[y] with the culpability of the law enforcement conduct' at issue."  United States v. Davis, 564 U.S. at 238 (quoting Herring v. United States, 555 U.S. 135, 143 (2009))(brackets in United States v. Davis, but not in Herring v. United States).  Consequently, "[w]hen the police exhibit 'deliberate,' 'reckless,' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs."  United States v. Davis, 564 U.S. at 238 (quoting Herring v. United States, 555 U.S. at 144).  By contrast, "when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot 'pay its way.'"  United States v. Davis, 564 U.S. at 238 (internal quotation marks have no citation).  "In those situations, officers act with an 'objectively reasonable good-faith belief that their conduct is lawful,' . . . precluding the application of the exclusionary remedy."  United States v. Pemberton, 94 F.4th 1130, 1137 (10th Cir. 2024)(quoting United States v. Davis, 564 U.S. at 257).

The good-faith exception most commonly arises in the context of warrant-based searches to allow entry of evidence obtained by officers acting "in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate that subsequently is determined to be invalid."

- 38 -

Massachusetts v. Sheppard, 468 U.S. 981, 987-88 (1984). "When a search is conducted pursuant to a warrant that is based on illegally obtained information," however, "a court is not to blindly apply the good-faith exception." United States v. Alabi, 943 F. Supp. 2d at 1260. "Instead, the court is to consider the warrant with the illegally obtained information excluded and determine, based on the remaining information, whether probable cause nevertheless existed." United States v. Alabi, 943 F. Supp. 2d at 1260. If the warrant affidavit's remaining content establishes probable cause, the search pursuant to that warrant is appropriate, and the evidence is admissible:

> When a warrant is tainted by some unconstitutionally obtained information, we nonetheless uphold the warrant if there was probable cause absent that information. [United States v. Cusumano, 83 F.3d 1247, 1250 (10th Cir. 1996)]. "An affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information was critical to establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." United States v. Snow, 919 F.2d 1458, 1460 (10th Cir. 1990).

United States v. Sims, 428 F.3d 945, 954 (10th Cir. 2005). See United States v. Bullcoming, 22 F.4th 883, 890-92 (10th Cir.), cert. denied, 142 S. Ct. 2805 (2022). "The apparent rationale for this rule is that one officer cannot execute a warrant 'in good faith' if it contains information that he or a fellow officer obtained illegally." United States v. Alabi, 943 F. Supp. 2d at 1260 (quoting United States v. Herrera, 444 F.3d 1238, 1249 (10th Cir. 2006)).

In United States v. Leon, the Supreme Court concludes that a court need not suppress evidence seized pursuant to a facially valid warrant which later turns out to lack probable cause, as long as police are acting in good-faith reliance on that warrant. See 468 U.S. at 922-23; id. at 468 U.S. at 905. The Supreme Court notes that excluding this evidence will not deter police misconduct, as the officer took all of the necessary steps to comply with the Fourth Amendment and reasonably thinks his warrant, and, thus, his search, is valid. See United States v. Leon, 468 U.S. at 918-19. The Supreme Court explains that, when a warrant is issued on less than probable

cause, the person whose conduct the law wishes to deter is the issuing judge and that excluding

the evidence will not have a significantly deterrent effect on judicial conduct.  See 468 U.S. at 916-

17.  "The Tenth Circuit therefore now applies the rule that, in cases where the police obtained a

warrant but the affidavit supporting the warrant does not establish probable cause, suppression of

the evidence found is generally not warranted, so long as the officers relied in good faith on the

warrant."    United States v. Martinez,    696    F. Supp. 2d    1216,    1244    (D.N.M.

2010)(Browning, J.)(citing United States v. Tuter, 240 F.3d 1292, 1300 (10th Cir. 2001); United

States v. Danhauer, 229 F.3d 1002, 1007 (10th Cir. 2000)).

> "[T]he suppression of evidence obtained pursuant to a warrant should be
> ordered . . . only in those unusual cases in which exclusion will further the purposes
> of the exclusionary rule," [United States v. Leon, 468 U.S.] at 918 . . . .  "Where an
> officer acting with objective good faith obtains a search warrant from a detached
> and neutral magistrate and the executing officers act within its scope, there is
> nothing to deter."  United States v. Nolan, 199 F.3d 1180, 1184 (10th Cir. 1999).

United States v. Tuter, 240 F.3d at 1298-99.

Furthermore, the Tenth Circuit has explained that, "[u]nder Leon, we presume good-faith

when an officer acts pursuant to a warrant unless one of 'four contexts' appl[ies]."  United States

v. Barajas, 710 F.3d 1102, 1110 (10th Cir. 2013).

> First, evidence should be suppressed if the issuing magistrate was misled by an
> affidavit containing false information or information that the affiant would have
> known was false if not for his "reckless disregard of the truth."  [United States v.
> Leon, 468 U.S.] at 923 . . . .  Second, the exception does not apply when the
> "issuing magistrate wholly abandon[s her] judicial role."  Id.  Third, the good-faith
> exception does not apply when the affidavit in support of the warrant is "so lacking
> in indicia of probable cause as to render official belief in its existence entirely
> unreasonable."  Id. (quotation omitted).  Fourth, the exception does not apply when
> a warrant is so facially deficient that the executing officer could not reasonably
> believe it was valid.  See id.

United States v. Danhauer, 229 F.3d at 1007 (quoting United States v. Leon, 468 U.S. at 922-23).

See United States v. Perrine, 518 F.3d 1196, 1206-07 (10th Cir. 2008).  "If any of these situations

is present, the good-faith exception should not be applied, and the evidence should be excluded."

United States v. Romero, 743 F. Supp. 2d at 1316.

In Herring v. United States, the Supreme Court clarifies that, "[t]o trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system."  555 U.S. at 144.  Officers arrest Herring pursuant to an arrest warrant listed in the Dale County, Alabama, warrant database, and discover drugs and a gun on Herring's person during a search incident to arrest.  See 555 U.S. at 137.  Herring is then indicted on federal gun- and drug-possession charges.  See 555 U.S. at 138.  It turns out, however, that the warrant under which the officers arrested Herring had been recalled, but the database had not been updated to reflect that recall.  See 555 U.S. at 138.  Asserting that the evidence found during the search is fruit of an unlawful arrest, Herring seeks to suppress it.  See 555 U.S. at 138.

The Supreme Court concludes that, although the police's failure to update the warrant database to reflect that Herring's warrant is withdrawn was negligent, the police's omission is not reckless or deliberate.  See 555 U.S. at 140.  The Supreme Court reiterates its holding in United States v. Leon: "When police act under a warrant that is invalid for lack of probable cause, the exclusionary rule does not apply if the police acted 'in objectively reasonable reliance' on the subsequently invalidated search warrant."  Herring v. United States, 555 U.S. at 142 (quoting United States v. Leon, 468 U.S. at 922).  The Supreme Court further explains that "'evidence should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional.'"  Herring v. United States, 555 U.S. at 143 (quoting Illinois v. Krull, 480 U.S. 340, 348-49 (1987)).  As long as the "police have [not] been shown to be reckless in maintaining [the] warrant system, or to have

knowingly made false entries to lay the groundwork for future false arrests," exclusion of evidence is not warranted when the arrest was made on objectively reasonable reliance on a warrant that had been subsequently recalled.  Herring v. United States, 555 U.S. at 146.

In Davis v. United States, the Supreme Court confronts the question whether to apply the exclusionary rule when police conduct a search in objectively reasonable reliance on binding judicial precedent.  See 564 U.S. at 239.  At the time of the officer's search, the Supreme Court had not yet decided Arizona v. Gant, 556 U.S. 332 (2009), which held that the Fourth Amendment requires officers to demonstrate a continuing threat to their safety posed by the arrestee or a need to preserve evidence related to the crime of the arrest to justify a warrantless vehicular search incident to arrest.  See Arizona v. Gant, 556 U.S. at 341-48.  The United States Court of Appeals for the Eleventh Circuit had interpreted the Supreme Court's decision in New York v. Belton, 453 U.S. 454 (1981), as establishing a bright-line rule authorizing the search of a vehicle's passenger compartment incident to a recent occupant's arrest.  See United States v. Gonzalez, 71 F.3d 819, 825 (11th Cir. 1996).  Although the officers' search incident to the defendant's arrest "was in strict compliance with then-binding Circuit law and was not culpable in any way," it was unconstitutional under Arizona v. Gant.  United States v. Davis, 564 U.S. at 239-40.

The Supreme Court determines that the "acknowledged absence of police culpability dooms [the defendant's] claim."  United States v. Davis, 564 U.S. at 240.  The Supreme Court explains that "[p]olice practices trigger the harsh sanction of exclusion only when they are deliberate enough to yield 'meaningful' deterrence, and culpable enough to be 'worth the price paid by the justice system.'"  United States v. Davis, 564 U.S. at 240 (quoting Herring v. United States, 555 U.S. at 144).  The Supreme Court states: "The conduct of the officers here was neither of these things.  The officers who conducted the search did not violate [the defendant's] Fourth

Amendment rights deliberately, recklessly, or with gross negligence.  Nor does this case involve any 'recurring or systemic negligence' on the part of law enforcement."  United States v. Davis, 564 U.S. at 240 (quoting and citing Herring v. United States, 555 U.S. at 144).  The Supreme Court concludes that, "[u]nless the exclusionary rule is to become a strict-liability regime, it can have no application in this case."  United States v. Davis, 564 U.S. at 240.

### 3.    Inevitable-Discovery Exception.

Under the inevitable-discovery exception, the exclusionary rule does not apply if the government can prove by a preponderance that "the evidence inevitably would have been discovered by lawful means."  United States v. Braxton, 61 F.4th 830, 833 (10th Cir. 2023)(quoting United States v. Neugin, 958 F.3d at 931).  See United States v. Christy, 739 F.3d 534, 540 (10th Cir. 2014).  "The government possesses the burden of proving by a preponderance of the evidence that the evidence at issue would have been discovered without the Fourth Amendment violation." United States v. Cunningham, 413 F.3d 1199, 1203 (10th Cir. 2005).  For the inevitable-discovery exception to apply, there must be a "lawful police investigation [that] inevitably would have discovered" the evidence in question.  United States v. Owens, 782 F.2d 146, 152 (10th Cir. 1986). The Tenth Circuit clarifies, however, that the inevitable-discovery exception does not require an independent investigation that would have discovered the evidence in question, so long as "the lawful means of discovery are 'independent of the constitutional violation.'"  United States v. Christy, 739 F.3d at 540-41 (quoting United States v. Larsen, 127 F.3d 984, 987 (10th Cir. 1997)). The Tenth Circuit has urged courts to consider the "'danger of admitting unlawfully obtained evidence on the strength of some judge's speculation that it would have been discovered legally anyway.'"  United States v. Owens, 782 F.2d at 152-53 (quoting United States v. Romero, 692 F.2d 699, 704 (10th Cir. 1982)).  Accordingly, "courts should be realistic, if not skeptical, when assessing the probability that law-enforcement officers would inevitably have uncovered the

challenged evidence through an independent investigation." <u>United States v. Martinez</u>, 696 F.

Supp. 2d 1216, 1244 (D.N.M. 2010)(Browning, J.).

The Tenth Circuit further explains that, "[w]hile the inevitable discovery exception does

not apply in situations where the government's only argument is that it had probable cause for the

search, the doctrine may apply where, in addition to the existence of probable cause, the police

had taken steps in an attempt to obtain a search warrant." <u>United States v. Souza</u>, 223 F.3d 1197,

1203 (10th Cir. 2000). The Tenth Circuit states that "a court may apply the inevitable discovery

exception only when it has a high level of confidence that the warrant in fact would have been

issued and that the specific evidence in question would have been obtained by lawful means."

<u>United States v. Souza</u>, 223 F.3d at 1205.  In <u>United States v. Souza</u>, 223 F.3d 1197, the Tenth

Circuit adopts four factors to determine "how likely it is that a warrant would have been issued

and that the evidence would have been found pursuant to a warrant":

> 1) "the extent to which the warrant process has been completed at the time those
> seeking the warrant learn of the search"; 2) the strength of the showing of probable
> cause at the time the search occurred; 3) whether a warrant ultimately was obtained,
> albeit after the illegal entry; and 4) "evidence that law enforcement agents 'jumped
> the gun' because they lacked confidence in their showing of probable cause and
> wanted to force the issue by creating a fait accompli."

223 F.3d at 1204 (quoting <u>United States v. Cabassa</u>, 62 F.3d 470, 473-74, 473 n.2 (2d Cir. 1995)).

<u>See</u> <u>United States v. Cunningham</u>, 413 F.3d at 1204-05 (applying the four factors that <u>United States</u>

<u>v. Souza</u> outlines).  In <u>United States v. Christy</u>, the Court applies the four <u>United States v. Souza</u>

factors and determines that the inevitable-discovery exception applies.  <u>See</u> <u>United States v.</u>

<u>Christy</u>, 810 F. Supp. 2d 1219, 1275-79 (D.N.M. 2011), <u>aff'd,</u> 739 F.3d 534 (10th Cir. 2014).

## <u>ANALYSIS</u>

The Court denies the suppression motion, because the Zimmerman Aff. sets forth probable

cause to search Martinez' residence.  Probable cause is a relatively low standard; it does not require

proof that something is more likely true than false.  See Wright & Miller, 1 Fed. Prac. & Proc. Crim. § 53 (5th ed.).  "Probable cause requires only a 'fair probability,' a standard understood to mean something more than a 'bare suspicion' but less than a preponderance of the evidence at hand."  United States v. Denson, 775 F.3d 1214, 1217 (10th Cir. 2014)(quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).  When assessing whether the government meets the probable cause standard, courts look to the "totality of the circumstances."  United States v. Ludwig, 641 F.3d 1243, 1248 (10th Cir. 2011).

Courts differentiate affidavit statements that are conclusory from those affidavit statements that are based upon adequate information and belief.  In Nathanson v. United States, 290 U.S. 41 (1933), the Supreme Court concludes that an affiant's sworn statement that "he has cause to suspect and does believe that" liquor illegally brought into the United States is located on the premises does not establish probable cause, because the affidavit "went upon a mere affirmation of suspicion and belief without any statement of adequate supporting facts."  290 U.S. at 44-46.  See Illinois v. Gates, 462 U.S. at 239 (describing the affidavit in Nathanson v. United States as "wholly conclusory").  Likewise, in Aguilar v. Texas, 378 U.S. 108 (1964), the Supreme Court concludes that an officer's statement based on an unidentified informant that heroin is stored in a home does not establish probable cause.  378 U.S. at 115-16.  There, the affiant's warrant statement says: "[a]ffiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described premises for the purpose of sale and use contrary to the provisions of the law."  Aguilar v. Texas, 378 U.S. 108, 109 (1964), abrogated by Illinois v. Gates, 462 U.S. 213, (1983).  The Supreme Court explains that, although affidavits can be based on hearsay and "need not reflect the direct personal observations of the affiant," the Magistrate Judge must "be informed of some of

the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed . . . was 'credible' or his information 'reliable.'" Aguilar v. Texas, 378 U.S. at 114.  There, because the affidavit does not identify the "credible person," the affidavit does not provide "a sufficient basis for probable cause." Aguilar v. Texas, 378 U.S. at 115.  See Illinois v. Gates, 462 U.S. at 239 (describing the affidavit in Aguilar v. Texas as "a mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause").

In Illinois v. Gates, however, the Supreme Court applies the "totality-of-the-circumstances" analysis to conclude that a search warrant for the defendant's home and car, in part based on an anonymous letter detailing the defendant's criminal activity, sets forth probable cause. 462 U.S. at 214-15.  Despite the anonymity of the search warrant affidavit's source, the Supreme Court notes that independent police work provides its own supporting information and also corroborates many of the key details in the anonymous letter.  See 462 U.S. at 241-42.  The anonymous letter notifies the police of the defendant's drug trafficking activity and correctly predicts the defendant's specific travel route to Florida.  462 U.S. at 244.  The police independently track both; the police investigation suggests that the defendant is involved in drug trafficking based on the defendant's location in Florida -- a popular source of narcotics -- and his peculiar travel arrangements while there.  See 462 U.S. at 243.

Here, Zimmerman's personal knowledge as an investigation participant, combined with his co-investigating agent's knowledge, is more than the conclusory sources lacking adequate facts in Nathanson v. United States and Aguilar v. Texas.  The Zimmerman Aff. states:

    4.     I make this affidavit based upon my own personal knowledge, which his substantially derived from my participation in the investigation, as well as that of

fellow agents and officers who have participated in the investigation. In addition, I have developed information I believe to be reliable from additional sources including:

>     a.      Information provided by Task Force Officers ("TFO's), Special Agents ("SA's), and Intelligence Research Specialists of the Drug Enforcement Administration, and other law enforcement officials ("agents"), including oral and written reports that I have received directly or indirectly from said investigators;
>
>     b.      Results of physical surveillance conducted by agents during the investigation;
>
>     c.      A review of telephone toll records and subscriber information;
>
>     d.      Information derived from consensually recorded conversations;
>
>     e.      Information derived from lawfully intercepted telephone conversations and text messages;
>
>     f.      A review of driver's license and automobile registration records;
>
>     g.      Records from commercial databases; and
>
>     h.      Records from the National Crime Information Center ("NCIC").

5.      This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

Zimmerman Aff. ¶ 4, at 2-3.

Zimmerman draws probable cause that Martinez is part of the charged drug trafficking conspiracy from both his personal participation in the investigation of Martinez and the activities of his co-investigators to conclude that Martinez traffics drugs. The investigators' personal knowledge and the investigation's eight different evidentiary sources are more substantial than the conclusory suspicion in Nathanson v. United States that the affiant "has cause to suspect and does believe that" liquor illegally brought into the United States is located at the place to be searched. 290 U.S. at 44. Moreover, the direct reliability and credibility of these sources are stronger than the

anonymous, unverified source regarding heroin possession in <u>Aguilar v. Texas</u>, 378 U.S. at 109, and are stronger than the anonymous, verified letter in <u>Illinois v. Gates</u>, 462 U.S. at 241-42, that the Supreme Court deems sufficient to establish probable cause.    Zimmerman's personal knowledge as an investigator in this case and his co-investigators' personal knowledge, combined with at least eight legitimate evidentiary sources resulting from the investigation, is a substantial basis to conclude reasonably that Martinez is involved in drug trafficking.    Then, Zimmerman believably explains that, from his training and experience in this investigation and similar investigations, drug traffickers "often conceal evidence of their drug trafficking activities" in their residences, businesses, friends' and relatives' residences, and vehicles, because those are common locations where a person stores his or her belongings or items in his or her possession.    Zimmerman Aff. ¶ 7, at 4.    The Zimmerman Aff., therefore, "provide[s] the magistrate with a substantial basis for determining the existence of probable cause," <u>Illinois v. Gates</u>, 462 U.S. at 239, and is not a "mere ratification of the bare conclusions of others," <u>id</u>. at 239.

Martinez argues that this case's facts resemble the facts in <u>United States v. Gonzales</u>, 399 F.3d 1225 (10th Cir. 2005), where the Tenth Circuit concludes that the search warrant affidavit does not establish a connection between the defendant and the residence to be searched.    399 F.3d at 1227-28.    There, the search warrant affidavit identifies "321 E. Church" as the place to be searched but does not specify that the address is the defendant's residence.    399 F.3d at 1227-28. The detective-affiant also states that he has two years of law enforcement experience and thus knows from his prior training and experience that firearms often are kept at residences.    <u>See United States v. Gonzales</u>, 399 F.3d at 1228.    None of these statements, however, the Tenth Circuit reasons, make "any other connection between that location and Mr. Gonzales, the vehicle, or the suspected criminal activity." <u>United States v. Gonzales</u>, 399 F.3d at 1228.

This case is distinguishable because, unlike the bare-bones affidavit in <u>United States v.</u> <u>Gonzales</u>, the Zimmerman Aff. explicitly states that the place to be searched, 701 Menaul Blvd. NW, Albuquerque, NM 87107, is Martinez' residence.   <u>See</u> Zimmerman Aff. ¶ 35, at 19. Furthermore, although Zimmerman also draws on his law enforcement experience to conclude that drug traffickers "often conceal evidence of their drug trafficking activities in their residences and businesses," Zimmerman Aff. ¶ 7, at 4, Zimmerman relies on more than the affiant in <u>United States</u> <u>v. Gonzales</u>.  Zimmerman explains that his personal participation in the investigation of Martinez and his co-investigators' information is based on: (i) oral and written reports received directly or indirectly from investigators; (ii) physical surveillance; (iii) telephone toll records and subscriber information; (iv) recorded conversations; (v) telephone conversations and text messages; (vi) driver's license and automobile-registration records; (vii) records from commercial databases; and (viii) records from the National Crime Information Center.  <u>See</u> Zimmerman Aff. ¶ 4, at 2. From these credible and reliable sources of information, Zimmerman "obtains information regarding the illegal drug trafficking activities" of Martinez.  Zimmerman Aff. ¶ 3, at 2.  Then, from a reasonable person's perspective as well as from Zimmerman's substantive DEA experience, it is reasonable to conclude that a person trafficking drugs may have evidence of drug trafficking in their residence.  Having established a sufficient basis to believe that Martinez traffics drugs, the Court concludes there is probable cause to believe that Martinez' residence has evidence of the alleged crime.

**IT IS ORDERED** that the Defendant's Motion to Suppress, filed July 7, 2025 (Doc. 301), is denied.

UNITED STATES DISTRICT JUDGE

- 49 -

*Counsel:*

Ryan Ellison
  United States Attorney
Louis C. Mattei
Elaine Y. Ramirez
Raquel Ruiz-Velez
Matthew J. McGinley
Blake Nichols
  Assistant United States Attorney
Albuquerque, New Mexico

     *Attorneys for the Plaintiff*

Megan Kathleen Mitsunaga
Law Office of Megan Mitsunaga
Albuquerque, New Mexico

-- and --

Michael Vincent Severo
The Severo Law Firm
Pasadena, California

     *Attorneys for the Defendant Heriberto Salazar Amaya*

Marshall J. Ray
Law Offices of Marshall J. Ray
Albuquerque, New Mexico

     *Attorney for the Defendant Cesar Acuna-Moreno*

Paul Linnenburger
Lane Linnenburger Lane LLP
Albuquerque, New Mexico

     *Attorney for the Defendant Bruce Sedillo*

Susan L Burgess-Farrell
Burgess & Porter LLC
Albuquerque, New Mexico

     *Attorney for the Defendant Vincent Montoya*

Jon K Stanford
The Law Office of Jon Stanford
Albuquerque, New Mexico

     *Attorney for the Defendant Francisco Garcia*

Diego R. Esquibel
Esquibel Law Firm, PA
Albuquerque, New Mexico

     *Attorney for the Defendant David Anesi*

Phillip G Sapien
Sapien Law, LLC
Albuquerque, New Mexico

     *Attorney for the Defendant George Navarrete-Ramirez*

Carter Harrison
Nicholas T. Hart
Harrison & Hart, LLC
Albuquerque, New Mexico

     *Attorneys for the Defendant Alex Anthony Martinez*

Timothy Wilson Cornish
Albuquerque, New Mexico

     *Attorney for the Defendant Jose Luis Marquez*

Thomas M. Clark
Clark and Jones, LLC
Albuquerque, New Mexico

     *Attorney for the Defendant Nicholas Tanner*

John C. Anderson
Holland & Hart LLP
Santa Fe, New Mexico

     *Attorney for the Defendant Brian Sanchez*

Carey Bhalla
Roshanna K Toya
Rothstein Donatelli LLP
Albuquerque, New Mexico
      *Attorneys for the Defendant Kaitlyn Young*

Joseph E. Shattuck
Marco and Shattuck Law Firm
Albuquerque, New Mexico

      *Attorney for the Defendant Alan Singer*

Gregory M. Acton
Acton Law Office PC
Albuquerque, New Mexico

      *Attorney for the Defendant David Altamirano Lopez*

Mallory Margaret Gagan
Gagan Law, LLC
Albuquerque, New Mexico

      *Attorney for the Defendant Roberta Herrera*

M. Naomi Salazar
M. Naomi Salazar, Attorney at Law
Albuquerque, New Mexico

      *Attorney for the Defendant Misael Lopez-Rubio*